UNITED STATES, Appellee

v.

Timothy S. WHITNEY, Technical Sergeant
U. S. Air Force, Appellant

No. 00-0555/AF

Crim. App. No. 32807

United States Court of Appeals for the Armed Forces

Argued November 15, 2000

Decided September 20, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which SULLIVAN, GIERKE, EFFRON, and BAKER, JJ., joined. BAKER, J., filed a concurring opinion.

<u>Counsel</u>

For Appellant: Lieutenant Colonel Timothy W. Murphy (argued); Colonel James R. Wise and Captain Patience E. Schermer (on brief); Major Thomas R. Uiselt.

For Appellee: Major Mitchel Neurock (argued); Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Bryan T. Wheeler (on brief); Lieutenant Colonel William B. Smith and Major Jennifer R. Rider.

Military Judge: Robin D. Wamsley

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Chief Judge CRAWFORD delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of rape, forcible sodomy, assault, assault consummated by battery, and indecent assault, in violation of Articles 120, 125, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, 928, and 934, respectively. The convening authority approved the court-martial's sentence to a dishonorable discharge, confinement for 7 years, and reduction to the lowest enlisted grade. The Court of Criminal Appeals found the simple assault and rape charges to be multiplicious and dismissed the assault charge. That court, in an unpublished opinion, directed that appellant receive 22½ days of credit towards service of his sentence to confinement for prior punishment he received under Article 15, UCMJ, 10 USC § 815, for the indecent assault for which he was convicted. Appellant's pro se petitions to the Court of Criminal Appeals for a new trial and reconsideration of its initial decision were denied.

We granted review on the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED ERROR WHEN, CONTRARY TO MILITARY RULE OF EVIDENCE 301(f)(3), HE ADMITTED TESTIMONY THAT, WHEN QUESTIONED BY AN INVESTIGATOR BEFORE TRIAL, APPELLANT ELECTED TO REMAIN SILENT AND SUBSEQUENTLY, AFTER DISCOVERING THE ERROR, MADE AN INADEQUATE AND UNTIMELY CURATIVE INSTRUCTION.

We hold that the investigator's comment on appellant's silence, in violation of Mil.R.Evid. 301(f)(3), Manual for Courts-Martial, United States (2000 ed.),[*] was error, but it was harmless beyond a reasonable doubt.

                              FACTS

     Appellant was the second highest ranking member of a 44-person team performing temporary duty at Sembach Air Base, Germany, in September 1996.  During this temporary duty, he and Airman First Class D, the victim of the rape, sodomy, and assault consummated by battery, were billeted in rooms on the second floor of a building.  On September 21, 1996, Airman First Class D was returning to her room after performing her duties.  On the way to her room, she encountered appellant, who was standing in the hallway holding a beer.  Appellant asked Airman First Class D to come into his room.  She complied because she thought she was going to receive some corrective counseling.  Once she was in the room, appellant locked the door, turned out the lights, and proceeded to rape and sodomize her while holding a knife at her throat.

     On November 14, 1996, appellant underwent a polygraph examination conducted by Special Agent (SA) Hunter, Air Force Office of Special Investigations (AFOSI).  Appellant's military

---

[*] All Manual provisions are identical to the version in effect at the time of appellant's trial.

defense counsel was present during the examination. For this particular examination, military defense counsel and the AFOSI specifically agreed that appellant would waive his rights under Article 31(b), UCMJ, 10 USC § 831(b), and could be questioned during the pre-polygraph interview as well as during the test itself. The parties agreed that there would be no post-polygraph interview.

At trial, SA Hunter was called as a prosecution witness. Without differentiating between the pre-polygraph interview and the post-polygraph interview, SA Hunter related appellant's version of what occurred on the night of September 21, 1996. In short, appellant's version was that the victim was the sexually aggressive party, and the two had engaged in consensual sexual intercourse and consensual sodomy. The following questions and answers then took place:

> TC: And at the conclusion of the interview, did you confront Sergeant Whitney?
>
> WIT: Yes, I did.
>
> TC: What did you tell him?
>
> WIT: I told him that I didn't – did not feel he'd been truthful in his answers.
>
> Q: What did Sergeant Whitney tell you?
>
> A: He did not say anything.
>
> Q: Did he make -- after this, did the interview continue?

> A:  I escorted him to the door to exit; and on the way out, he extended his hand and thanked me for doing a good job.

> TC:  Thank you.

Trial defense counsel did not immediately object to this line of questioning because this testimony, to the casual observer, referred to the pre-polygraph interview.  After the questions by the prosecution, defense counsel clarified the direct examination.  Following further examination, two court members asked virtually identical questions:  "Why do you feel TSgt Whitney was not truthful during the interview?"  When the trial counsel registered a written objection to the questions, a session followed under Article 39(a), UCMJ, 10 USC § 839(a).

After learning at the Article 39(a) session that SA Hunter's opinion as to appellant's untruthfulness was based on his "evaluation" of the polygraph examination, the judge sustained the objection.   See United States v. Scheffer, 523 U.S. 303 (1998).  Based on the witness's response, the judge said he would instruct the members to disregard that portion of the testimony.

At the request of defense counsel, who thought it would be better to clarify SA Hunter's normal interview procedure for the court, the military judge recalled the members and the following ensued:

> Q:  Special Agent Hunter, you testified that you stated

> to Tech Sergeant Whitney that you felt he was not being truthful, is that correct?

A:   Yes, sir, I did.

Q:   Is it your normal practice to make that statement to the subject of a subject interview?

A:   Yes, sir.

MJ:  Now, to deal with two other issues.  You're to disregard his testimony about the fact that Sergeant Whitney didn't respond to that.  That is not admissible evidence and I probably should have struck it earlier.  So, please do disregard that.

     In regards to the questions by Captain Hansen and Colonel Walgamott, which is the same question, 'Why did you feel that Tech Sergeant Whitney was not truthful during the interview,' that's not a permissible question.  The reason being is determination of truth is your realm, and nobody can come in here and tell you whether or not someone is being truthful.  That's purely up to you to decide.

PRES:  Okay.

MJ:  Any other questions by the members?

(Negative response by all members.)

### DISCUSSION

There were two evidentiary errors in this case.  First, without objection, SA Hunter provided "human lie detector" testimony.  Second, contrary to Mil.R.Evid. 301(f)(3), SA Hunter testified that appellant did not respond to the polygrapher's challenge that appellant was not being truthful.

"Human lie detector" testimony is inadmissible.  See, e.g., United States v. Birdsall, 47 MJ 404, 410 (1998).  Furthermore,

6

SA Hunter's view that appellant was not being truthful reflects the opinion of a polygrapher and is inadmissible evidence pursuant to Mil.R.Evid. 707(a).  As soon as he realized the error, the military judge took two steps to correct the problem.  He recalled the members and, at the request of the defense counsel, elicited from SA Hunter that Hunter's challenge to appellant (that he did not believe him), which precipitated the unfortunate remark about appellant's silence, was a routine statement made to all subjects who had just finished making a statement.

To further diminish the importance of SA Hunter's testimony, the military judge instructed the members that the question concerning SA Hunter's belief about appellant's honesty should never have been asked, and it was the members alone who were the finders of fact and the adjudicators of truth.  By adding the instruction ". . . determination of truth is your realm, and nobody can come in here and tell you whether or not someone is being truthful.  That's purely up to you to decide," the military judge negated any question or inference that SA Hunter's opinion was either admissible or material evidence.

Mil.R.Evid. 301 implements the constitutional and statutory privilege against self-incrimination.  Rule 301(f)(3) provides that the "fact that the accused during official questioning and in exercise of rights under the Fifth Amendment to the

Constitution of the United States or Article 31, remained silent, refused to answer a certain question, requested counsel, or requested that the questioning be terminated is inadmissible against the accused."

SA Hunter's testimony that appellant did not respond to a challenge to his truthfulness was admitted in violation of Rule 301(f)(3) and was an error of constitutional proportion. The military judge, however, endeavored to cure this error by admonishing the members to disregard this portion of SA Hunter's testimony. The curative measure taken by the military judge in this case could have been clearer and more forceful. See United States v. Garrett, 24 MJ 413, 417 (CMA 1987). Nonetheless, the president of the court acknowledged that he understood why two members' questions were not being asked, and he understood the judge's instruction to disregard testimony about appellant's silence. In the absence of contrary evidence, court members are presumed to understand and follow the military judge's instructions. United States v. Holt, 33 MJ 400, 408 (CMA 1991); United States v. Loving, 41 MJ 213, 235 (1994).

This is a case that involved testimonial error, objection by counsel, and quick remedial action by the military judge. Having reviewed the entirety of the evidence, to include the victim's credible, persuasive testimony, we are satisfied that SA Hunter's "human lie detector" testimony did not have a

substantial influence on the findings.  Kotteakos v. United States, 328 U.S. 750, 765 (1946). We are also convinced beyond any reasonable doubt that appellant was not prejudiced by SA Hunter's comment about appellant's silence.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Whitney, 00-0555/AF

BAKER, Judge (concurring):

I agree with the majority opinion regarding the remedial actions taken by the military judge in this case. The military judge effectively performed his duty to ensure a fair trial by promptly providing clear, curative instructions in response to SA Hunter's opinion regarding appellant's polygraph examination. The testimonial error in this case was harmless, given the weight of the evidence against appellant, including the testimony of the victim, the improbability of appellant's account, and testimony regarding the victim's post-rape behavior.

I write separately to emphasize that Wyrick v. Fields, 459 U.S. 42, 47 (1982), is both sword and shield. In Wyrick, the Court concluded that "[d]isconnecting the polygraph equipment effectuated no significant change in the character of the interrogation" and, therefore, Wyrick's consent to a polygraph interview without counsel present also constituted consent to the post-polygraph interview without counsel present. Essential to the Court's finding of waiver in Wyrick was the Court's conclusion that Wyrick's consent was voluntary and knowing, and that he intelligently waived his right to counsel.

Wyrick also understood that he had the right to stop questioning (of any sort) at any time, and this

understanding was reflected in writing, in plain language. Further, the Court's holding is limited to a specific right, the Fifth Amendment right to counsel.  The Court expressly declined to address the dissent's argument that the questioning violated Wyrick's Sixth Amendment right to counsel, since those issues were not before the Court.  Id. at 49.

As the Court in United States v. Scheffer, 523 U.S. 303, 312 (1998), reminded, Mil.R.Evid. 707, Manual for Courts-Martial, United States (2000 ed.), is a per se rule against the introduction of polygraph evidence at courts-martial.  Further, the Court's ruling in Scheffer relied in part on the conclusion that only reliable evidence should be admitted into evidence, and "there is simply no consensus that polygraph evidence is reliable."  Id. at 309.

For these reasons, and in light of Wyrick, military judges should take great care to ensure that any waiver of rights associated with a polygraph examination is voluntary, knowing, and intelligent, which means among other things that the accused knows and understands which rights are being waived.  Military judges and counsel must also carefully watch the 707 backdoor to ensure, as Judge Wamsley did in this case, that allusions to polygraph

2

examinations are immediately addressed and omitted from evidence.  In light of the clarity of Scheffer and Mil.R.Evid. 707, intentional and inadvertent references to polygraph examinations elicited by counsel should not occur.