IN THE CASE OF

UNITED STATES, Appellee

v.

Michelle L. KASPER, Airman First Class
U.S. Air Force, Appellant

No. 02-0318

Crim. App. No. 34351

United States Court of Appeals for the Armed Forces

Argued December 11, 2002

Decided June 24, 2003

EFFRON, J., delivered the opinion of the Court, in which
BAKER and ERDMANN, JJ., joined. GIERKE, J., filed a separate
opinion concurring in the result. CRAWFORD, C.J., filed a
separate dissenting opinion.


## Counsel

For Appellant:  Major Andrew S. Williams (argued); Major Terry
L. McElyea and Captain Jennifer K. Martwick (on brief); and
Captain James M. Winner.

For Appellee:  Major Jennifer R. Rider (argued); Colonel LeEllen
Coacher and Lieutenant Colonel Lance B. Sigmon (on brief);
and Colonel Anthony P. Dattilo.


Military Judge:  James L. Flanary

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to her pleas, of wrongful use of 3, 4-methylenedioxymethamphetamine (ecstasy), in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). She was sentenced to a bad-conduct discharge, confinement for 90 days, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion.

On Appellant's petition, we granted review of the following issues:

> I.   WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE ALLOWED SPECIAL AGENT LOZANIA TO TESTIFY AS A "HUMAN LIE DETECTOR" AND THEN FAILED TO PROVIDE ANY CURATIVE INSTRUCTIONS TO THE MEMBERS.

> II.  WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN, OVER DEFENSE OBJECTION, HE AGREED TO GIVE THE "FRIEDMANN INSTRUCTIONS" IF, DURING APPELLANT'S UNSWORN STATEMENT, SHE SAID THAT HER COMMANDER COULD ADMINISTRATIVELY DISCHARGE HER OR MADE ANY SENTENCE COMPARISONS.

For the reasons set forth below, we conclude that the military judge erred when he permitted the prosecution to introduce "human life lie detector" testimony and failed to provide

2

cautionary instructions.  Because this error requires the findings to be set aside, we need not address the second issue.

## I. BACKGROUND
### A. "HUMAN LIE DETECTOR" TESTIMONY

Under Military Rule of Evidence 608 [hereinafter M.R.E.], a party may introduce opinion evidence regarding the general character of a person for truthfulness.  The authority to introduce such opinion evidence, however, does not extend to "human lie detector" testimony – that is, an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case.  See United States v. Whitney, 55 M.J. 413, 415 (C.A.A.F. 2001); United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993).  In a child sexual abuse case, for example, an expert on the subject of child abuse is not permitted to testify that the alleged victim is or is not telling the truth as to whether the abuse occurred.  See United States v. Harrison, 31 M.J. 330, 332 (C.M.A. 1990).

Our cases have noted several reasons for restricting human lie detector testimony.  First, determination of truthfulness "exceeds the scope of a witness' expertise, for the expert lacks specialized knowledge . . . to determine if a child-sexual-abuse victim [is] telling the truth."  United States v. Birdsall, 47 M.J. 404, 410 (C.A.A.F. 1998)(citing United States v. Arruza, 26

M.J. 234, 237 (C.M.A. 1988); United States v. Petersen, 24 M.J. 283, 284 (C.M.A. 1987)(internal quotations omitted)).  Second, such an opinion violates the limits on character evidence in M.R.E. 608(a) because it offers an opinion as to the declarant's truthfulness on a specific occasion, rather than the knowledge of the witness as to the declarant's reputation for truthfulness in the community.  See Arruza, 26 M.J. at 237; United States v. Cameron, 21 M.J. 59, 62 (C.M.A. 1985).  Third, such opinion testimony places a "stamp of truthfulness on a witness' story," Arruza, 26 M.J. at 237 (quoting United States v. Azure, 801 F.2d 336 (8th Cir. 1986)), in a manner that "usurps the jury's exclusive function to weigh evidence and determine credibility." Birdsall, 47 M.J. at 410.  The prohibition applies not only to expert testimony, but also to conclusions as to truthfulness offered by a nonexpert.  See United States v. Robbins, 52 M.J. 455, 458 (C.A.A.F. 2000).  If a witness offers human lie detector testimony, the military judge must issue prompt cautionary instructions to ensure that the members do not make improper use of such testimony.  See Whitney, 55 M.J. at 415-16. Cf. Robbins, 52 M.J. at 458 (finding no prejudice because trial was by military judge rather than members).

B. TESTIMONY AT APPELLANT'S TRIAL

The present case concerns the testimony of Special Agent (SA) Maureen Lozania of the Office of Special Investigations (OSI) about an interrogation of Appellant during an investigation into illegal drug use.

The topic of SA Lozania's interrogation of Appellant was first broached by trial counsel. During his opening statement trial counsel indicated that the evidence would show that during interrogation by SA Lozania and Travis Reese, an Air Force security policeman, Appellant initially denied using drugs, and then confessed. Defense counsel's opening statement sought to raise doubt that Appellant had actually confessed, suggesting instead that the agents mistakenly perceived Appellant's statements based upon erroneous preconceptions:

> [Y]ou will see . . . an alleged oral confession by Airman Kasper. Presumably, two OSI agents will testify that they thought that they heard Airman Kasper say that she used ecstasy. You will also hear that those OSI agents kept pushing and pushing and pushing, after Airman Kasper denied and denied and denied, and they believed they heard her confess to a one-time use of ecstasy. When they started that interrogation of Airman Kasper, . . . they had in their minds already suspected her of having used ecstasy . . . they'd already had a preconceived notion of what they thought she had done.

Defense counsel added that the members "[will not] see . . . . believable evidence that Airman Kasper admit[ted] using

5

ecstasy," and concluded by asking, "[w]here is the supporting proof that there really was a confession?"  At the outset of her testimony, trial counsel asked SA Lozania to describe her training and experience in an effort to establish SA Lozania's credentials as a person well-qualified to conduct interrogations.  Trial counsel then asked a series of questions concerning the charges against Appellant.  SA Lozania testified that during the OSI investigation into drug use, Airman Wells, Appellant's boyfriend, stated that he had used ecstasy with Appellant while visiting friends in Jacksonville, Florida.  SA Lozania and another agent, Mr. Reese, then interrogated Appellant.  When they initially confronted Appellant, she denied using drugs while visiting Florida with Airman Wells.  According to SA Lozania, they then took a break to allow Appellant "to gather her thoughts" and the two agents left the room.

In response to a question from trial counsel, SA Lozania's testimony provided an opinion as to the veracity of Appellant's denial:  "We decided she wasn't telling the truth.  She wasn't being honest with us and we decided that we needed to build some themes and help her to talk about what had happened."

According to SA Lozania, the questioning resumed and Appellant began to cry.  Eventually, Appellant responded affirmatively to a question as to whether she had used ecstasy in Florida.  She held up one finger, which SA Lozania

6

interpreted as a statement that she had used ecstasy once while in Jacksonville. Trial counsel then asked: "At the time she told you that she had used ecstasy and put up her finger and started to cry, was there anything about what she said or the way she behaved that made you believe at that time that she was falsely confessing to you?" SA Lozania responded: "No."

On cross-examination, defense counsel sought to undermine the reliability of SA Lozania's interpretation of events by emphasizing Appellant's repeated denials during the initial stages of the interrogation. Defense counsel contrasted the special agent's skeptical treatment of Appellant with their apparent acceptance of Airman Wells' statement. In response to defense counsel's question as to whether she had proceeded on the assumption that Appellant was guilty, SA Lozania stated that "we assess through body language and other things if the individual is being truthful or not." When defense counsel asked whether they had confronted Airman Wells, SA Lozania attempted to respond by providing her view of Appellant's credibility. Defense counsel interrupted with a request that she answer the original question, and the military judge directed her to do so. Defense counsel then noted that the only evidence SA Lozania had developed regarding Appellant prior to the interrogation was the statement of Airman Wells, and asked whether she regarded Airman Wells as credible. SA Lozania

responded: "He had indicated that he was being truthful" and that that was sufficient.

During redirect examination, trial counsel asked SA Lozania why she believed Airman Wells' statement. She responded with a physiological conclusion -- that Airman Wells "gave all verbal and physical indicators of truthfulness," adding that her conclusion reflected her OSI training and experience. Trial counsel began a question by asking, "Now, how about Airman Kasper, what verbal indicators - [.]" Before the witness responded, defense counsel objected and requested a proceeding outside the presence of the members under Article 39(a), 10 U.S.C. § 839(a) (2000). In the Article 39(a) session, defense counsel objected that trial counsel's question would have required SA Lozania to provide impermissible human lie detector testimony. Trial counsel countered that the question did not ask SA Lozania to serve as a human lie detector, and was designed simply to address an issue raised by the defense on cross-examination – why SA Lozania and Mr. Reese had not confronted Airman Wells before continuing their interrogation of Appellant. The military judge ruled that the question as originally asked was impermissible. Over defense objection, however, he permitted the prosecution to rephrase the question to SA Lozania as follows: "At the time that you interviewed Airman Kasper and she initially denied using [drugs], why is it

that you did not go and interview Airman Wells and confront him?"  When the trial counsel resumed his redirect examination before the members, the following exchange ensued:

> TC: Agent Lozania, [the defense counsel] was questioning during your interview with Airman Kasper why you did not end the interview and go confront Airman Wells. First, my question is, is that a common interviewing technique, that you would stop and interview after an initial denial of guilt?
>
> WIT: No, sir.
>
> Q. And why is that?
>
> A. If the person shows any indicators of being untruthful, then we just continue with the interview.
>
> Q. And that was the case in Airman Kasper's interview?
>
> A. Yes, sir.
>
> Q. And when you continued your interview of Airman Kasper, you indicated your goal was to get the truth, were there, in your experience, ever times where a subject interview cleared the individual, turned out that you no longer believed they were guilty of the offense they were suspected of?
>
> A. Yes, sir.
>
> Q. And obviously, there were times when the interview incriminates them and you believe even more firmly that they may have committed the offense that you're investigating, is that correct?
>
> A. Correct.

After counsel for both parties completed the questioning of SA Lozania, the military judge told the members that they could submit to him any questions that they might have for the witness. A member submitted the following question: "[W]hat were the indicators you observed to make you believe [Appellant] was lying (your observations only – before discussing with Reese)." The military judge convened an Article 39(a) session to consider the propriety of the question. Trial counsel argued that the question was permissible if rephrased to ask SA Lozania what specific physical indicators she observed, without referencing her belief that Appellant was lying. Defense counsel responded:

> [T]he question's already been asked, "What observations did you make." As far as Airman Wells, the questions and the answers came out too quickly. Obviously, on Airman Kasper, that's when we jumped in with an objection. They're trying to make her into a human lie detector, and obviously, that's their determination, not ours.

The military judge ruled that the question could not be asked. When the members were recalled, the military judge advised them as follows:

> [A]s written that question also would not be an appropriate question. In effect, you're asking the witness to become a human lie detector and the witness cannot testify as a human lie detector from the stand . . . . The determination of what happened, that's solely a matter within the discretion of the panel members after you have heard all the

10

> evidence that is admissible and after you've
> gotten closing instructions[.]

During the defense case, Appellant testified that while she and Airman Wells were in Jacksonville, he purchased ecstasy pills during a gathering at his friend's home and then placed one of the pills in her hand. Appellant stated that she accepted the pill because she did not want the other persons present, who were also buying ecstasy pills, to think that she was an undercover law enforcement agent. However, approximately fifteen minutes later, Appellant went to the restroom and "threw [the pill] down the toilet" without alerting anyone to her actions. Regarding her alleged confession to SA Lozania and Mr. Reese, Appellant testified that she repeatedly denied ever using ecstasy. She further stated that she held up her finger to indicate that she had been to Jacksonville on only one occasion, not that she had used ecstasy while there.

At the conclusion of the presentation of the evidence on the merits, the military judge provided the members with the standard instruction that it was their duty to determine the believability of the witnesses. The military judge also instructed the members that Appellant's character for honesty and truthfulness "may be sufficient to cause a reasonable doubt as to her guilt. On the other hand, evidence of the accused's good character for honesty and truthfulness may be outweighed by

other evidence tending to show the accused's guilt...and I'll just stop it there."  The military judge omitted from this instruction the standard reference to "character for dishonesty."

### III. DISCUSSION

We review a military judge's decision to admit evidence for an abuse of discretion.  United States v. Johnson, 46 M.J. 8, 10 (C.A.A.F. 1997).  The issue of whether the members were properly instructed is a question of law, which we review de novo. United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F. 2002).

The Court of Criminal Appeals offered the following reasons for affirming the conviction in response to Appellant's claim of error:

> Appellant . . . claims that the trial judge committed plain error when he failed to stop [SA Lozania's] "human lie detector" testimony.  We find no such error.  To establish plain error, the appellant must demonstrate that the trial judge committed error; the error was plain, that is clear or obvious; and the error materially prejudiced a substantial right of the appellant. United States v. Powell, 49 M.J. 460, 464 (1998); see Article 59(a), UCMJ, 10 U.S.C. § 859(a).

> [SA Lozania] testified about interview techniques used in questioning the appellant and Amn Wells once she became convinced they (the appellant and Amn Wells) were not telling the truth.  She first mentioned these techniques on direct examination and

12

trial defense counsel did not object. That failure to object forfeited appellate review of that part of [SA Lozania's] testimony absent plain error. See Powell, 49 M.J. 460. We find no plain error.

We note that it is a basic principle of criminal practice that "human lie detector" evidence is not admissible in a trial. United States v. Whitney, 55 M.J. 413, 415 (2001). However, except for [SA Lozania's] testimony to which the appellant did not object, the appellant opened the door to such testimony when cross-examining [SA Lozania]. It is apparent from the record of trial that one of the appellant's trial tactics was to attempt to impeach the credibility of witnesses against the appellant by challenging the AFOSI interview techniques. Trial counsel elicited the challenged testimony from [SA Lozania] only after the trial defense counsel challenged the interview techniques on cross-examination and thereby opened the door to the prosecution's rebuttal. Therefore, the trial judge did not abuse his discretion in allowing [SA Lozania's] rebuttal testimony. Ayala, 43 M.J. at 298.

United States v. Kasper, No. ACM 34351, slip op. at 3 (A.F. Ct. Crim. App. Dec. 28, 2001).

We have several concerns with the approach suggested by the court below. First, the impermissible use of opinion testimony as to Appellant's truthfulness was initiated by the prosecution, not the defense. At the outset of the prosecution's case-in-chief, after establishing SA Lozania's qualifications as an experienced interrogator, trial counsel elicited two opinions from SA Lozania on Appellant's truthfulness regarding use of

13

ecstasy, the central issue in the case. SA Lozania testified on direct examination that Appellant was not being truthful when she denied using ecstasy; and that when Appellant confessed to using ecstasy, there was nothing to indicate that the confession was false.

The picture painted by the trial counsel at the outset of the prosecution's case through SA Lozania's testimony was clear: a trained investigator, who had interrogated many suspects, applied her expertise in concluding that this suspect was lying when she denied drug use and was telling the truth when she admitted to one-time use. Such "human lie detector" testimony is inadmissible. See Whitney, 55 M.J. at 415. Moreover, in this case, the human lie detector evidence was presented as a physiological conclusion. SA Lozania twice stated that Appellant "gave all the physical indicators" of being untruthful. Regardless of whether there was a defense objection during the prosecution's direct examination of SA Lozania, the military judge was responsible for making sure such testimony was not admitted, and that the members were provided with appropriate cautionary instructions. See id. at 415-16.

The importance of prompt action by the military judge in the present case is underscored by the central role of the human lie detector testimony. The testimony was not offered on a peripheral matter or even as a building block of circumstantial

evidence.  The prosecution introduced human lie detector testimony on the ultimate issue in the case – whether Appellant was truthful as to the charge of wrongful use of ecstasy.  In these circumstances, the error in permitting such evidence to be introduced was clear and it materially prejudiced the substantial right of appellant to have the members decide the ultimate issue decided without the members viewing Appellant's credibility through the filter of human lie detector testimony.  See Birdsall, 47 M.J. at 410; Powell, 49 M.J. at 464.  To the extent that the dissent relies on cases involving the evidence that may be used to rebut a defense challenge to the voluntariness of a confession, __ M.J. at (4), those cases are inapposite here because the defense challenged the existence of the confession, not voluntariness.

Although the erroneous admission of this testimony on direct examination is sufficient to require reversal, we also are concerned with the manner in which the military judge addressed subsequent opinion testimony about witness credibility.  Even if we were to ignore the prosecution's affirmative use of human lie detector testimony and view the subsequent defense as opening the door to rebuttal, the military judge should have recognized that the repeated introduction of opinion testimony about the truthfulness of witnesses on the ultimate issue in the case required him to provide the members

with detailed instructions.  SA Lozania's testimony, that Appellant was giving "indicators of being untruthful," reasonably could have been perceived by the members as an expert opinion on Appellant's credibility during the interrogation. The question posed from the panel member following SA Lozania's testimony should have demonstrated to the military judge that at least one of the members had focused in on Appellant's physical "indicators" of deceit, as described by SA Lozania, as a critical piece of evidence.  Under those circumstances, detailed guidance was essential to ensure that the members clearly understood both the limited purpose for which the evidence might have been considered and the prohibition against using such evidence to weigh the credibility of Appellant and Airman Wells. Although as a general matter instructions on limited use are provided upon request under M.R.E. 105, the rule does not preclude a military judge from offering such instructions on his or her own motion, see United States v. Mark, 943 F.2d 444, 449 (4th Cir. 1991), and failure to do so in an appropriate case will constitute plain error.  United States v. Garcia, 530 F.2d 650, 655 (5th Cir. 1976)(citing Upham v. United States, 328 F.2d 661 (5th Cir. 1964)(per curiam)).

The present case does not involve a stray remark on a secondary matter.  This case involves a central issue at trial. The impermissible evidence was first introduced by the

prosecution, the defense forcefully objected to subsequent introduction of such evidence, and a question generated by the court-martial panel illustrated the manner in which the member's might affirmatively use human lie detector testimony to weigh credibility on an outcome-determinative issue. In those circumstances, the failure to provide appropriate guidance to the members constituted plain error.

The brief comments by the military judge explaining to the members why he found a particular question to be inappropriate did not constitute an adequate substitute for proper guidance. The comments by the military judge told the members why they would not be provided with certain information, but it failed to guide them with specificity as to how they should and should not consider the human lie detector evidence that had been placed before them. Under the circumstances of this case, the failure to provide such guidance constituted prejudicial plain error.

## IV. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is reversed. The finding of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered. Art. 67(e), UCMJ, 10 U.S.C. § 867(e) (2000).

United States v. Kasper, 02-0318/AF

GIERKE, Judge (concurring in the result):

In my view, the admission of much of Special Agent (SA) Maureen Lozania's testimony on the credibility issue was harmless error because it amounted to a statement of the obvious: criminal investigators will continue asking questions until they think they have a truthful and complete statement from a suspect. However, I agree with the majority that SA Lozania's testimony regarding Appellant's credibility went beyond the permissible limits of Military Rule of Evidence 608. Trial counsel crossed the line when he elicited evidence that SA Lozania was an experienced, trained investigator; elicited her opinion that Appellant was lying; and asked her about the verbal and physical indicators she employed to evaluate truthfulness. The need for a strong curative instruction became obvious when a court member asked what indicators SA Lozania had observed that caused her to believe that Appellant was lying.

I agree with the majority that the military judge's brief ruling on the impropriety of the member's question and his general boilerplate instruction on credibility of witnesses were inadequate to ensure that the members were not unduly influenced by SA Lozania's "expert" opinion that Appellant was lying. In my view, the military judge committed plain error. He failed to give a strong curative instruction when the improper question was asked, and he failed to give the members carefully tailored guidance in his final instructions.

CRAWFORD, Chief Judge (dissenting):

I interpret the sequence of events at trial differently than the majority.  In my view, the testimony elicited through the Government's direct and redirect-examination of Special Agent (SA) Maureen Lozania was proper rebuttal of the defense's allegation of a coerced confession, prominent in both the opening statement and the cross-examination of SA Lozania. Additionally, the lead opinion stands in stark contrast to prevailing trial practice and the weight of legal authority. For these reasons, I respectfully dissent.

### THE OPENING STATEMENT AND DIRECT-EXAMINATION OF SA LOZANIA

In its opening statement, trial counsel outlined the sequence of events that occurred during the interrogation, to establish that the interrogation resulted in a confession. Trial counsel noted:

> They bring her in, talk to her for a few minutes to just sort of build rapport, and then when required to do so by the Uniform Code of Military Justice, advise her of her Article 31 rights.  She again, as with all suspects, is advised she has the right to remain silent, she has the right to request a lawyer, she is under investigation for a violation of the Uniform Code of Military Justice, and Airman Kasper tells the OSI agents [sic], "I understand my rights.  I waive my rights.  I'm willing to talk to you."  Agent Lozania questions Airman Kasper.  Airman Kasper initially denies the use of ecstasy.  Agent [sic] Reese, after a point, takes over the questioning.  He talks to her about various things, including trying to put it in to respect a typical case of OSI investigations/

> interrogations, the fact this could be a lot worse.
> People could accuse you of a bad crime here, or using
> every day. How much are you using it? And as the
> more experienced investigator, Agent [sic] Reese gets
> Airman Kasper to admit using drugs, specifically, as
> Agent [sic] Reese and Agent Lozania will tell you,
> Airman Kasper said "I used it one time," raises her
> finger, her index finger, and starts crying.

There was no suggestion of coercion in trial counsel's opening statement. Trial counsel simply walked the members through the interrogation process, which successfully resulted in a confession.

Defense counsel responded by informing the members that they would see "[a]n <u>alleged</u> oral confession by Airman Kasper," which counsel then highlighted was one of only two items on which the Government's case rested. (Emphasis added.) Counsel then strikingly noted:

> You will also hear that <u>those OSI agents [sic] kept</u>
> <u>pushing and pushing and pushing</u>, after Airman Kasper
> denied and denied and denied, and <u>they believed that</u>
> <u>they heard her confess</u> to a one-time use of ecstasy.
> When they started that interrogation of Airman Kasper,
> at that point, before they even asked question one,
> <u>right out of the chute</u>, <u>they had in their minds</u>
> <u>already suspected her of having used ecstasy</u>. They
> had already interviewed at least one other suspect in
> the case, Airman Wells. <u>They'd already decided --</u>
> <u>they'd already had a preconceived notion of what they</u>
> <u>thought she had done</u>.

(Emphasis added.) This vivid language epitomizes the tone of the defense counsel's opening statement. In short, the opening statement suggested that the coercive nature of the

2

interrogation invalidated, and in effect rendered nonexistent, Appellant's confession.

By creating a theme of coercion in its opening statement, the defense opened the door for Government rebuttal on the issue.  See United States v. Franklin, 35 M.J. 311, 317 (C.M.A. 1992); United States v. Chavez, 229 F.3d 946, 952 (10th Cir. 2000); United States v. Croft, 124 F.3d 1109, 1120 (9th Cir. 1997); United States v. Moore, 98 F.3d 347, 350 (8th Cir. 1996); United States v. Knowles, 66 F.3d 1146, 1161 (11th Cir. 1995); United States v. Breitkreutz, 977 F.2d 214, 220 (6th Cir. 1992); United States v. McAnderson, 914 F.2d 934, 949 (7th Cir. 1990); see generally James W. McElhaney, Trial Notebook, "Opening the Door" 163 (3d ed. 1994).  Moreover, by raising the possibility of a coerced confession, the defense challenged the Government to "prove at least by a preponderance of the evidence that the confession was voluntary."  Lego v. Twomey, 404 U.S. 477, 489 (1972).  Indeed, this challenge reflected the "defendant's constitutional right . . . to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness[.]"  Jackson v. Denno, 378 U.S. 368, 376-77 (1964).  See also United States v. Ellis, 57 M.J. 325, 390-91 (C.A.A.F. 2002)(Effron, J., dissenting).  In so doing, the defense rendered the techniques used to elicit the confession fair game for Government inquiry,

as such techniques would have a "tendency to make the existence of . . . [coercion] more probable or less probable than it would be without the evidence."  See Military Rule of Evidence 401.

With the door opened to address coercion, and bearing the burden to prove that Appellant's confession was voluntary, the Government properly probed the techniques used by SA Lozania to elicit the confession.  Specifically, trial counsel asked SA Lozania about his conversation during a break with a co-interviewer, Mr. Travis Reese.  SA Lozania replied that he and Mr. Reese "decided that [Appellant] wasn't telling the truth. She wasn't being honest with us and we decided that we needed to build some themes and help her talk about what had happened." Trial counsel then asked if building themes was a common Office of Special Investigations (OSI) interview technique, to which SA Lozania responded affirmatively.  Thus, the portion of the Government's direct examination of SA Lozania that Appellant alleges was improper "human lie detector" evidence was, by contrast, a proper effort by the Government to refute the defense's allegation of coercion.  Cf. United States v. Turner, 39 M.J. 259, 262 (C.M.A. 1994)(noting that because there was "nothing more than a single passing comment during defense counsel's opening statement," the door was not opened for a government response to the comment).

CROSS-EXAMINATION AND
REDIRECT-EXAMINATION OF SA LOZANIA

Reiterating the theme of coercion developed in its opening statement, the defense then cross-examined SA Lozania regarding the validity of OSI interview techniques. Specifically, defense counsel inquired about the "Reed Technique" used by OSI agents, and rhetorically asked, "I mean, you're thinking she's guilty, right?" and "From interrogations, the goal is to get a confession, isn't it, at the end of the day?" Counsel also challenged SA Lozania's failure to terminate the interview despite Appellant's repeated denial of guilt and contrasted SA Lozania's disbelief of Appellant's denial with her acceptance of Airman Wells's statement. The cross-examination discrediting SA Lozania's interview techniques comprised approximately 14 pages of the record of trial.

Having already rendered the issue of a coerced confession fair game for argument through its opening statement, the defense opened the door to rebuttal even more widely through its extensive cross-examination of SA Lozania. See United States v. Vasquez, 267 F.3d 79, 85 (2d Cir. 2001); United States v. Segall, 833 F.2d 144, 148 (9th Cir. 1987); United States v. Goudy, 792 F.2d 664, 673 (7th Cir. 1986); United States v. Barrentine, 591 F.2d 1069, 1081 (5th Cir. 1979); United States

v. Walker, 421 F.2d 1298, 1299 (3d Cir. 1970).  Accordingly, in its redirect-examination, the Government asked SA Lozania whether he believed Airman Wells's statement was truthful, and then asked -- after a session under Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a) (2000) -- if indicators of untruthfulness prompted the agents to continue the interview with Appellant despite Appellant's denial of guilt, to which SA Lozania responded affirmatively.  This line of questioning was properly targeted to refute the implication of coercion behind the defense's cross-examination into the agents' failure to stop their interrogation.  Furthermore, the questions properly served to meet the Government's burden to "prove at least by a preponderance of the evidence that the confession was voluntary."  Twomey, 404 U.S. at 489.

Moreover, the lead opinion misses the main issue in the case when it speaks of cautionary instructions as to character for truthfulness.  The question of truthfulness, or lack of truthfulness, was raised as a voluntariness issue rather than a credibility issue concerning impeachment.  __ M.J. (3, 11).

Accordingly, I would hold that the military judge did not err in allowing SA Lozania's testimony and declining sua sponte to provide curative instructions.

6