BAKER, Chief Judge,
with whom RYAN, Judge, joins (dissenting):
I concur with the majority’s judgment that the testimony of Special Agent (SA) Peachey regarding nonverbal cues and deception constituted “human lie detector” evidence. I also agree that the admission of this evidence was obvious error, although certainly it is more obvious when spliced together on appeal than in the context of an ongoing trial. Civilian defense counsel expressly referred to the redirect examination testimony as “human lie detector” evidence. Moreover, SA Peachey’s statement that he could discern deception by observing a person’s physiological and behavioral reaction to questions is the very essence of what it would mean to serve as a human polygraph.
Nonetheless, I disagree with the majority on prejudice. For sure, a curative instruction addressed specifically, to human lie detector evidence would have resolved this matter. However, unless we are going to treat the introduction of any human lie detector evidence as per se prejudicial or structural in nature, which we have not before done, I do not see how the introduction of this evidence in this case materially prejudiced a substantial right of the accused. Indeed, the argument that Appellant was not prejudiced is overwhelming. The undermentioned facts distinguish this case from Kasper. United States v. Kasper, 58 M.J. 314 (C.A.A.F.2003).
First, Appellant confessed.
Second, the evidence corroborating Appellant’s confession was overwhelming and it was generated before SA Peachey entered the picture. Specifically, physical evidence in the form of Appellant’s DNA confirmed sexual intercourse between the Appellant and the victim. Appellant testified that he had removed the condom from the garbage can in the victim’s room, thereby removing physical evidence of the encounter. MS, who went drinking with the victim and Appellant, testified that the victim was “pretty drunk,” “really drunk,” and even “could [not] walk on her own.” The victim could not recall what occurred, and Appellant chose not to refresh her recollection. Indeed, he made no reference to the events of the night before when driving with the victim after leaving her room the next day. The nurse who performed the sexual assault examination testified that Appellant denied having sex with the victim at all, demonstrating to the members that Appellant from the very outset was less than consistent in his explanation of the events.
Third, defense counsel introduced to the members the entirety of the interrogation video to which SA Peachey’s testimony was addressed. The video included multiple occasions where SA Peachey and his partner suggested they did not believe Appellant was truthful: “You know how I know that’s not true?”; “You’re dancing on the line of me saying that you were a complete jerk and you ran me around the table for hours”; “Why would you want to try and destroy the evidence? ... Because she didn’t know the whole time, did she?”; “[W]e can get the whole entire story and all the details when we come back”; and “So, no more playing these little games, dancing around the flagpole trying to pull one over on the OSI agents. Okay? When we come back in here one hundred percent truth — .” The members could judge Appellant’s credibility and reaction to the interrogation for themselves.
Fourth, Appellant testified. The members could judge Appellant’s demeanor and credibility for themselves.
Fifth, trial counsel did not rely on SA Peachey’s testimony in closing argument.
Appellant’s rebuttal to all this is that the members were already tainted in their perception of Appellant’s credibility by SA Pea-chey’s testimony. As such, they would not have heeded the military judge’s admonition to judge credibility for themselves even when given the opportunity to do so by listening to *39 Appellant’s testimony and viewing the video the defense introduced documenting the testimonial events in question.
This argument and the majority opinion give SA Peachey’s words a Solomonic status they do not deserve. SA Peachey’s testimony was not presented with numerical certainty removing any doubt including reasonable doubt, as was the case in Brooks, where we found the expert witness’s remarks “suggested ... there was better than a ninety-eight percent probability that the victim was telling the truth.” United States v. Brooks, 64 M.J. 325, 329 (C.A.A.F.2007). Or in Mullins, where the expert testimony “involve[d] a statistical statement” that there was “a 1 in 200 chance the victim [was] lying.” United States v. Mullins, 69 M.J. 113, 116 (C.A.A.F.2010). Rather, SA Peachey offered evidence that would have been intuitive to any member of a military panel. Peachey was a special agent with interrogation training who thought Appellant was deceptive when questioned; presumably the Government would not have charged Appellant with the offense in question otherwise.
For these reasons, I respectfully dissent on the question of prejudice and would affirm the Court of Criminal Appeals and this ease.