# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, K.M. MCDONALD, M.C. HOLIFIELD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**TREVER E. SMITH**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400106**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 22 November 2013.
**Military Judge**: LtCol E.A. Harvey, USMC.
**Convening Authority**: Commanding Officer, 9th Communication Battalion, I Marine Expeditionary Force Headquarters Group, I Marine Expeditionary Force, FMFPAC, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation**: Col M.D. Nafus, USMC.
**For Appellant**: LT Jessica L. Fickey, JAGC, USN.
**For Appellee**: CDR Mary Grace McAlevy, JAGC, USN; Maj Crista D. Kraics, USMC.

**21 August 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A panel of officer and enlisted members sitting as a special court-martial convicted the appellant, contrary to his pleas, of making a false official statement and two specifications of larceny, in violation of Articles 107 and 121,

Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 921.  The members sentenced the appellant to confinement for 4 months, forfeiture of $1,010.00 pay per month for 4 months, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged and, except for that part of the sentence extending to a bad-conduct discharge, ordered it executed.

The appellant asserts three assignments of error: (1) that the record is not substantially verbatim, thus precluding approval of a punitive discharge; (2) that the admission of "human lie detector" testimony was plain error; and, (3) that his conviction is legally and factually insufficient.[1]

After carefully considering the record of trial and the submissions of the parties, we conclude that the findings as to Charge I and its sole specification and Specification 1 of Charge II must be set aside due to the improper admission of human lie detector testimony coupled with the military judge's failure to instruct the members to disregard it.  However, we also conclude the finding as to Specification 2 of Charge II is free of any error materially prejudicial to the substantial rights of the appellant.  In light of the serious nature of the sole remaining specification and other factors, we conclude that the penalty landscape has not dramatically changed, and reassess the sentence.  Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and Lance Corporal (LCpl) RP were barracks roommates from December 2010 to 17 June 2011.  During that time, appellant had access to, and on several occasions used with permission, LCpl RP's Toshiba laptop computer.  On 26 May 2011, $2,500.00 was transferred from LCpl RP's Navy Federal Credit Union (NFCU) account to the appellant's NFCU account.  When confronted, the appellant did not admit to effecting the transfer, but agreed to pay LCpl RP back.

On 17 June 2011, the appellant and his new wife moved to an off-base apartment.  On 28 June 2011, LCpl RP returned to his

---

[1] This last issue is raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

barracks room to find the door kicked in and his Toshiba laptop missing.

On 26 September 2011, another $2,500.00 was transferred from LCpl RP's NFCU account to the appellant's NFCU account. This transfer was effectuated electronically using a certain internet protocol (IP) address. This IP address was associated with the appellant's email address in both May and September 2011. The appellant and his wife contacted LCpl RP and offered to assist him in working with NFCU to reverse the transfer. NFCU was able to return the funds to LCpl RP's account.

On the same day as the second transfer, someone using the same IP address accessed LCpl RP's myPay account, changed the password, and edited the direct deposit information to reflect the appellant's NFCU account number. In October 2011, LCpl RP's two military paychecks were deposited to the appellant's NFCU account. These deposits were later reversed.

On 5 January 2012, someone used a different IP address to access LCpl RP's myPay account, this time altering the direct deposit information to reflect the NFCU account of a civilian contractor working in Afghanistan. The contractor, upon learning of the erroneous deposit to his account, directed NFCU to return the funds to their rightful owner.

The appellant's bank and credit card account records for the period April to November 2011 reflect chronic financial issues, including repeated overdraft charges. The same was true of his wife's finances.

When interviewed by Naval Criminal Investigative Service (NCIS) Special Agent (SA) W, the appellant denied owning any computers. However, a subsequent search of the appellant's apartment located three laptop computers, including LCpl RP's missing Toshiba laptop. The agents found LCpl RP's laptop on a closet shelf. Later analysis showed the Toshiba laptop had not been accessed since the date LCpl RP reported it stolen.

Forensic analysis of one of the other seized computers revealed cached webpages evidencing a failed attempt to change LCpl RP's debit card PIN. The cached webpages also included

3

copies of LCpl RP's NFCU bank statements and the 26 May 2011 transfer from LCpl RP's NFCU account to the appellant's account.

During a 15 May 2012 interview at NCIS, the appellant told SA W that he purchased the Toshiba laptop from a third party in the barracks parking lot; he did not mention there being any witnesses to the transaction. At trial, the defense presented testimony from an alleged eyewitness to the laptop transaction, as well as testimony of the appellant's wife to corroborate that the transaction took place. The appellant's sister-in-law, MA, also testified to seeing LCpl RP in the appellant's apartment on several occasions, during which visits LCpl RP rummaged through drawers and used the appellant's computer. Despite being certain of her memory of these visits, MA had not mentioned these events in her previous statement to NCIS.

In response to direct examination regarding the appellant's explanation of how he obtained the Toshiba laptop, SA W stated, "Well, I felt like it was a lie."[2] Defense counsel did not object and the military judge did not provide a limiting instruction *sua sponte*. On cross-examination regarding the same issue, SA W stated, "He was lying about a lot of things."[3] Again, there was no objection or limiting instruction.

Prior to the court closing for deliberations, the military judge instructed the members regarding false exculpatory statements and provided the standard instruction on witness credibility. No specific mention was made of SA W's assertions that the appellant was lying. The military judge did not provide a "human lie detector" instruction.

Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.

### Verbatim Record

Completeness of a record of a trial is reviewed *de novo*. *United States v. Henry,* 53 M.J. 108, 110 (C.A.A.F. 2000). Throughout the transcript of trial counsel's rebuttal argument are more than 70 instances where his words are transcribed as

---

[2] Record at 332.

[3] *Id*. at 361.

4

"[inaudible]".  Article 54(c)(1)(B), UCMJ, requires a complete record of the proceedings and testimony be prepared in each special courts-martial case in which the sentence adjudged includes a punitive discharge.  RULE FOR COURTS-MARTIAL 1103(b)(2)(B) and (c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), further require that such records of trial contain "verbatim" transcripts of all sessions except sessions closed for deliberation and voting.

The Court of Appeals for the Armed Forces and its predecessor have long held that Article 54 requires only that transcripts be "substantially verbatim." *United States v. Lashley,* 14 M.J. 7, 8 (C.M.A. 1982).  Furthermore, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Henry,* 53 M.J. at 111. "[I]f the record is sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the . . . argument, then prejudice is not present." *United States v. Nelson,* 13 C.M.R. 38, 42 (C.M.A. 1953).  "When the omissions are so unimportant that the thought being expressed is readily ascertainable, then the record can be said to be verbatim." *Id*.

Here, any inaudible portions appear, at most, to be only a few words long.  Also, Appellate Exhibit LII, containing the slides used by trial counsel during his rebuttal argument, provides a clear map of the argument.  Despite the high number of inaudible words in the transcript, we are certainly able to ascertain the thoughts trial counsel expressed.  Therefore, we find the transcript to be substantially verbatim, and the assignment of error to be without merit.

### "Human Lie Detector" Testimony

We review a military judge's decision to admit evidence for an abuse of discretion.  *United States v. Kasper,* 58 M.J. 314, 318 (C.A.A.F. 2003).  Where an appellant did not preserve the issue by making a timely objection, that error will be forfeited in the absence of plain error.  *United States v. Knapp,* 73 M. J. 33, 36 (C.A.A.F. 2014) (citing *United States v. Brooks,* 64 M.J. 325, 328 (C.A.A.F. 2007)); MILITARY RULE OF EVIDENCE 103(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  Plain

error is established if: (1) there was error; (2) the error was clear or obvious; and (3) the error was materially prejudicial to the appellant's substantial rights.  *Knapp,* 73 M.J. at 36.

## A.  There is error.

Admission of "human lie detector" testimony is error. *United States v. Whitney,* 55 M.J. 413, 415 (C.A.A.F. 2001). This rule has been underscored by subsequent cases, including *Kasper,* 58 M.J. at 315, defining "human lie detector testimony" as "an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case," and *Knapp,* 73 M.J. at 36-37.  While the present case differs from *Kasper* and *Knapp* in that SA W's statements were not "presented as a physiological conclusion," *Kasper,* 58 M.J. at 319, and SA W was not offered as an expert in techniques designed to "divine a suspect's credibility from his physical reactions to the questioning," *Knapp,* 73 M.J. at 37, the Court of Appeals for the Armed Forces has not made such methodical or scientific bases a requirement for a statement to qualify as "human lie detection." A simple statement indicating the investigator believed the subject to be lying is enough.  *See Whitney,* 55 M.J. at 415 (finding error where special agent testified he felt appellant had not been truthful in answering his questions).

Improper human lie detector testimony can be remedied through proper instructions by the military judge; the issue of whether the members were properly instructed is a question of law, which we review *de novo*.  *Kasper,* 58 M.J. at 318-20.  "If a witness offers human lie detector testimony, the military judge must issue prompt cautionary instructions to ensure that the members do not make improper use of such testimony."  *Knapp,* 73 M.J. at 36 (quoting *Kasper,* 58 M.J. at 315).  This was not done here.

Accordingly, we find the admission of SA W's statements, combined with the military judge's failure to issue a timely cautionary instruction, to be error.

## B.  The error was clear or obvious.

"In determining whether the error was clear or obvious, we look to law at the time of the appeal." *Knapp,* 73 M.J. at 37 (citations omitted).  As the law regarding admission of human

lie detector testimony is well-settled, this error was clear or obvious. *Id.*

## C.  The error is prejudicial.

Like in *Kasper* and *Knapp,* the improper testimony here was initiated by the prosecution, and went to a central issue in the case.  The statement about which SA W opined that the appellant was lying is the very statement alleged to be false in Charge I.  Also, SA W's testimony was focused on the appellant's proffered explanation of how he obtained the laptop, impacting the element of "wrongfulness" of the alleged larceny.

The Government's evidence, extremely strong regarding the appellant's guilt to the larceny of funds, was substantially weaker regarding the theft of LCpl RP's laptop.  While there was evidence the appellant had used LCpl RP's laptop in the past, there was no evidence to indicate the laptop was visually distinguishable from any other Toshiba laptop.  The Government's own expert testified the laptop had not been accessed since the day it was stolen, so there was no way for the appellant to know the computer's owner by its contents.  Also, a defense witness testified to observing the parking lot transaction that the appellant described.

We find that even though the military judge instructed the members that they were the sole determiners of witness credibility, we have no means to determine what weight the members gave to SA W's testimony.  Accordingly, we cannot find that it did not prejudice a material right of the appellant. *United States v. Petersen,* 24 M.J. 283, 285 (C.M.A. 1987).  We do find, however, no prejudice regarding Specification 2 of Charge II, given the extensive evidence indicating the appellant's guilt.

### Legal and Factual Sufficiency

Having dealt with Charge I and its specification and Specification 1 of Charge II, we limit our examination of this final assignment of error to Specification 2 of Charge II.  We review questions of legal and factual sufficiency *de novo. United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is whether any rational trier of

7

fact could have found that the evidence met the essential elements of the charged offenses beyond a reasonable doubt, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses. *Id.* at 325. Here, we find in the affirmative on both tests.

The record contains ample evidence upon which the members based their finding of guilt: (1) appellant had opportunity to access LCpl RP's personal information; (2) the funds were transferred to the appellant's NFCU account; (3) screen shots from the appellant's computer show access to LCpl RP's NFCU and myPay accounts; (4) LCpl RP's accounts were accessed from appellant's IP address; (5) the timing of the direct deposit sent to the account of the civilian in Afghanistan – occurring soon after appellant's interview with SA W – strongly suggests it was done to direct suspicion away from the appellant; (6) the appellant's abysmal financial situation; (7) the appellant's statement to SA W that there were no computers at appellant's apartment; and, (8) allegations regarding LCpl RP's presence at appellant's apartment, obviously critical to the investigation, were uniformly and suspiciously late in coming to light.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable trier of fact could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

### Sentence Reassessment

In reassessing the sentence pursuant to *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), and *United States v. Sales,* 22 M.J. 305 (CMA 1986), we find as follows: (1) the maximum punishment for the offenses before the court members was the jurisdictional limit of a special court-martial, and the findings of this court, setting aside two specifications and a

8

charge, do not change this; (2) the remaining offense of which the appellant stands convicted is serious, involving complex efforts required to steal electronically thousands of dollars – including monthly pay - from a fellow Marine; (3) the remaining offense is by far the most serious of the three originally alleged; (4) nearly all of trial counsel's closing argument focused on the theft of funds; (5) trial counsel did not mention the stolen laptop or false statement in his sentencing argument; (6) throughout the presentation of its case, it was clear the Government believed the laptop theft was a part of the appellant's scheme to steal funds from his former roommate; and, (7) removing the laptop theft and related false denial does nothing to mitigate the seriousness of the appellant's actions. Accordingly, we find that, absent any error, the sentence would have been of at least the same severity as the one awarded by the court, and no change to the adjudged sentence is required.

## Conclusion

The findings of guilty as to Charge I and its specification and as to Specification 1 of Charge II are set aside and Charge I and its specification and Specification 1 of Charge II are dismissed. The remaining finding and the sentence as approved by the CA are affirmed.

For the Court


R.H. TROIDL
Clerk of Court