# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM S32340

————————————

### UNITED STATES
*Appellee*

v.

### Gonzalo A. CARNIO-NAVARRO
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 February 2017

————————————

*Military Judge:* Tiffany M. Wagner.

*Approved sentence:* Bad-conduct discharge, confinement for 2 months, and reduction to E-2. Sentence adjudged 15 May 2015 by SpCM convened at Robins Air Force Base, Georgia.

*For Appellant:* Major Michael A. Schrama, USAF.

*For Appellee:* Lieutenant Colonel Jennifer A. Porter, USAF; Captain J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges*.

Judge SPERANZA delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A special court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongfully using cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The members sentenced Appellant to a

bad-conduct discharge (BCD), two months of confinement, and reduction to the grade of E-2. The convening authority approved the adjudged sentence.

On appeal, Appellant asserts the following assignment of errors: (1) the military judge erred in instructing the panel members, "if based on your consideration of the evidence, you [are] firmly convinced of any offense charged, you must find him guilty";[1] (2) the military judge failed to grant relief based on the human lie detector testimony of a security forces investigator who testified that Appellant's response was typical of "a person that, you know, knows that they're – that they used the substance"; (3) the staff judge advocate's recommendation (SJAR) failed to provide accurate and proper advice to the convening authority regarding the convening authority's clemency powers under Article 60, UCMJ; (4) there was not ample evidence in the record other than the permissive inference to support Appellant's conviction;[2] and (5) trial counsel's findings argument was improper. We find no prejudicial error and affirm.

## I. BACKGROUND

Shortly after returning from leave over the Christmas and New Year's holidays with family in Miami, Florida—including at least one night of drinking and barhopping with friends—Appellant provided a urine sample for drug testing during a "dorm sweep." Appellant's urine sample tested positive for the cocaine metabolite benzoylecgonine (BZE).

## II. DISCUSSION

### A. Human Lie Detector Testimony

Appellant contends that:

> [T]he prosecution offered human lie detector testimony into evidence. Specifically, [Staff Sergeant (SSgt)] MC testified that Appellant's response was typical of someone who knew that they had used, and hence Appellant was concealing his use. . . . There is no legitimate purpose to this testimony; it was elicited only

---

[1] Consistent with the recently-decided *United States v. McClour*, No. 16-0455, 2017 CAAF LEXIS 51 (C.A.A.F. 24 January 2017), we find that, absent objection at trial, the instruction did not constitute plain error.

[2] Appellant's assignment of error is characterized as "whether there is ample evidence in the record other than the permissive inference to support a conviction in this case." We analyzed the error as raising both legal and factual sufficiency.

[to] bolster Appellant's alleged untruthfulness and purported knowing use of cocaine.

Appellant further asserts:

This testimony materially prejudiced the substantial rights of the Appellant. The improper testimony went to the core issue of the case; whether Appellant knowingly and wrongfully used cocaine. A government witness put forth impermissible testimony that required the intervention of the military judge and the military judge abused his [sic][3] discretion by allowing a government witness to submit these statements. There was no relevant reason to import this testimony other than to draw the inference that Appellant was untruthful and lying about not knowing how the cocaine metabolite was found in his urine sample.

However, the testimony Appellant complains of was elicited by trial *defense* counsel during cross-examination of SSgt MC. Indeed, it was trial defense counsel who, throughout the trial, sponsored the theory that Appellant's demeanor suggested that Appellant did not knowingly and wrongfully use cocaine. Accordingly, trial defense counsel cross-examined SSgt MC, one of the security forces investigators who interviewed Appellant, as follows:

Q. Investigator [C], you said that Airman Carnio-Navarro wasn't too sure about how cocaine may have gotten into his system. In fact, he had zero clue about how cocaine would have gotten in his system; correct?

A. Yes, sir.

Q. So, when you were asking these questions, in fact, when you first told him hey, you popped positive for cocaine, he had a blank look on his face like he didn't know what was going on; right?

A. Yes, sir.

Q. And so, in fact, it was a look of surprise or shock?

A. I wouldn't say surprise or shock. During interviews like that, that's a typical response for even if, you know, for a person that, you know, knows that they're -- that they used the substance.

---

[3] The military judge is female.

Q. And so, he's got this blank look on his face and repeatedly tells you that basically I have no idea how cocaine got in my system; correct?

A. Until towards the end when he said, "I guess the only way would be for him" -- someone to slip it into his drink.

Trial defense counsel did not object to the responses elicited by his question. The military judge did not *sua sponte* intervene or provide any instruction related to this specific testimony.

"Human lie detector testimony is inadmissible." *United States v. Whitney*, 55 M.J. 413, 415 (C.A.A.F. 2001). Human lie detector testimony is elicited when a witness provides "an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case." *United States v. Knapp,* 73 M.J. 33, 36 (C.A.A.F. 2014) (citation and internal quotation marks omitted). "There is no litmus test for determining whether a witness has offered 'human lie detector' evidence." *United States v. Jones,* 60 M.J. 964, 969 (A.F. Ct. Crim. App. 2005). If a witness does not expressly state that he believes a person's statements are truthful, we examine the testimony to determine if it is the "functional equivalent" of human lie detector testimony. *See United States v. Brooks,* 64 M.J. 325, 329 (C.A.A.F. 2007). Testimony is the functional equivalent of human lie detector testimony when it invades the unique province of the court members to determine the credibility of witnesses, and the substance of the testimony leads the members to infer that the witness believes a person is truthful or deceitful with respect to an issue at trial. *See United States v. Mullins,* 69 M.J. 113, 116 (C.A.A.F. 2010).

Because Appellant failed to object to this evidence at trial, we review for plain error. To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007).

In response to trial defense counsel's leading question, SSgt MC did not provide human lie detector testimony. SSgt MC did not expressly opine, in any respect, as to whether Appellant was truthful or untruthful. Moreover, SSgt MC's response to trial defense counsel's leading question was not the functional equivalent of human lie detector testimony. After agreeing with trial defense counsel that Appellant "had a blank look on his face like he didn't know what was going on," SSgt MC disagreed with trial defense counsel's assertion that the "look" on Appellant's face was a "look of surprise or shock." SSgt MC's answer to trial defense counsel's question merely explained his observation that Appellant's "look" was a "typical response" during interviews that could also be attributed to someone who knows that he used a substance. In context, the substance of SSgt MC's testimony did not lead the members to infer that

Appellant was untruthful or deceitful during the interview. The substance of SSgt MC's testimony also did not lead the members to infer that Appellant knowingly and wrongfully used cocaine. *See Mullins*, 69 M.J. at 116 (a witness cannot opine as to the guilt or innocence of an accused). Plainly, SSgt MC's testimony did not invade the unique province of the court members to weigh the credibility of witnesses or render findings in this case. Admission of SSgt MC's testimony on cross-examination did not amount to an error, plain or otherwise, that materially prejudiced a substantial right of Appellant.

Even if SSgt MC's testimony on cross-examination can be characterized as human lie detector testimony or its functional equivalent, we find that any error in its admission was invited by trial defense counsel. The invited error doctrine prevents a party from "creat[ing] error and then tak[ing] advantage of a situation of his own making [on appeal]." *United States v. Eggen*, 51 M.J. 159, 162 (C.A.A.F. 1999) (internal quotation marks omitted). Because trial defense counsel first elicited the evidence on cross-examination in an attempt to bolster his theory that Appellant's demeanor was indicative of a lack of knowledge and wrongfulness, "Appellant cannot now complain on appeal about the admission of human lie detector evidence." *United States v. Martin*, 75 M.J. 321, 327 (C.A.A.F. 2016).

## B. The Staff Judge Advocate's Recommendation

The SJAR was submitted to the convening authority after Appellant served his two months of confinement. Accordingly, the SJAR advised the following:

> The accused was sentenced to a reduction to E-2, confinement for 2 months, and a bad conduct discharge. The maximum imposable sentence for the offenses [sic] for which the accused was convicted is a bad conduct discharge, confinement for 1 year, forfeiture of two-thirds pay per months for 1 year, and reduction to the grade of E-1.
>
> . . . .
>
> I have considered all matter in the record of trial, including all matters presented in the presentencing portion of the trial. You do have the authority to disapprove, commute, or suspend in whole or in part the reduction to E-2. The confinement for 2 months has been served. You do not have the authority to disapprove, commute, or suspend in whole or in part the bad conduct discharge. The sentence adjudged is appropriate for the offense for which the accused was convicted. I recommend you approve the sentence as adjudged.

In Appellant's clemency request to the convening authority, trial defense counsel acknowledged the limits placed upon the convening authority's exercise of clemency under the Fiscal Year 2014 National Defense Authorization Act[4] and requested the convening authority "recommend that the Secretary of the Air Force exercise her authority under Article 74 [UCMJ] and substitute an administrative discharge for the BCD adjudged in this case." Trial defense counsel further explained that Appellant completed his confinement, was released, and "returned to his unit awaiting final action on his case." Trial defense counsel argued that Appellant made a "single mistake" of using cocaine and:

> For that one indiscretion he has already served two months in jail, lost rank, and will lose the Air Force career that he loves. He also has a federal conviction that will follow him the rest of his life. These punishments alone more than meet any requirements that justice may require for this crime and of this young man. A BCD for [Appellant] is. . . "unduly harsh."

In conclusion, trial defense counsel requested the convening authority's action "recommend that the Secretary of the Air Force find good cause and substitute an administrative discharge for the adjudged BCD." Appellant sought no other form of relief from the convening authority in his clemency request. Appellant did not object to the SJAR, nor did he identify any errors within the SJAR. The Addendum to the SJAR directed the convening authority to consider all matters submitted on clemency by Appellant and again recommended approval of the adjudged sentence. After considering Appellant's clemency submissions, the convening authority approved the adjudged sentence.

Appellant now claims, as error, that "[t]he SJAR advised the convening authority that confinement had been served; further, [the SJA] misadvised the convening authority that he did not have the authority to disapprove, commute or suspend in whole or in part the confinement." After confirming the convening authority's power to, within his discretion, disapprove, commute or suspend in whole or in part Appellant's confinement, Appellant concludes his argument by stating, "Failure to properly advise the convening authority, both in the SJAR and [Addendum] was error because the convening authority had the power to adjudge clemency in this case but was improperly advised he had none." Accordingly, Appellant asks us to find that the SJA provided the convening authority with erroneous advice, set aside the convening authority's action, and remand Appellant's case for new post-trial processing.

---

[4] Pub. L. No. 113-66, 127 Stat. 672, 952 (2013).

The proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted)). "If defense counsel does not make a timely comment on an omission in the SJA's recommendation, the error is waived unless it is prejudicial under a plain error analysis." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing Rule for Courts-Martial (R.C.M.) 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, Appellant must persuade this court that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65).

To meet the third prong of the plain error test in the context of a post-trial recommendation error, whether that error is preserved or is otherwise considered under the plain error doctrine, Appellant must make "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The low threshold for material prejudice with respect to an erroneous post-trial recommendation reflects the convening authority's vast power in granting clemency and is designed to avoid undue speculation as to how certain information might impact the convening authority's exercise of such broad discretion." *Id.* at 437. While the threshold is low, there must be some colorable showing of possible prejudice. *Id.*

Contrary to Appellant's assertions, the SJAR did not "misadvise" the convening authority, nor was it inaccurate. The SJAR correctly stated that Appellant had already served his confinement—a point of fact reiterated by Appellant in his petition for clemency. At most, the SJAR failed to affirmatively advise the convening authority that he could, within his discretion, disapprove, commute or suspend, in whole or in part, the adjudged confinement that had already been served by Appellant. The omission of this advice was not plain or obvious error.

Assuming, *arguendo*, that the omission of this advice under these circumstances amounted to plain error, we find that any error did not materially prejudice a substantial right of Appellant. In the context of the convening authority's exercise of post-trial discretion in this case, the omission of advice regarding confinement already served by Appellant in the SJAR was not inherently prejudicial. *See id.* Moreover, there "must be a colorable showing of possible prejudice in terms of how the omission potentially affected an Appellant's opportunity for clemency." *Id.* Apart from identifying the potential error, Appellant made no showing of possible prejudice. Appellant's argument did not reveal any connection between his served confinement and his clemency request. Appellant's clemency request focused exclusively on seeking relief from the ad-

judged punitive discharge. Appellant did not directly or indirectly seek any relief from the reduction in grade or confinement served. In fact, Appellant argued that these elements of the adjudged sentence, in addition to his conviction and loss of a military career, sufficiently punished Appellant for his offense and should be considered by the convening authority in support of his request for relief from the punitive discharge. Furthermore, we find that the two months of confinement already served by Appellant at the time of his clemency request was not of such unusual duration or severity that there was a reasonable likelihood that the term of confinement alone—without any argument or complaint by Appellant—"would have attracted the convening authority's attention for purposes of clemency." *Id*. Under these circumstances, Appellant has not made a colorable showing of possible prejudice.

## C. Legal and Factual Sufficiency—Permissive Inference

Apart from witness testimony regarding Appellant's interview with investigators during which Appellant merely admitted to being on leave in Miami drinking alcohol and "barhopping" with friends and acknowledged that cocaine could have unsuspectingly been placed in his drink, this case can be considered what is commonly referred to as a "naked urinalysis case." Accordingly, the members, in general, received evidence related to local drug testing procedures, the collection of Appellant's sample, and expert testimony explaining laboratory testing protocol, drug-specific toxicology, and Appellant's test results. Appellant did not offer evidence during findings.

After findings, the military judge and counsel discussed findings instructions. Trial defense counsel considered tailoring an instruction on the members' use of the permissive inference; however, he was satisfied with the military judge's proposed instructions. Trial defense counsel did not object the military judge's instructions. In pertinent part, the military judge instructed the members as follows:

> Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

> Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. You may infer from the presence of the cocaine metabolite in the accused's urine that the accused knew he used cocaine. However, the drawing of any inference is not required.

> The accused may not be convicted of the use of a controlled substance if the accused did not know he was actually using the substance. The accused's use of the controlled substance must be

knowing and conscious. For example, if a person places a controlled substance into the accused's drink, food, or cigarette without the accused's becoming aware of the substance's presence, then the accused's use was not knowing and conscious.

On appeal, Appellant argues that use of the permissive inference is not alone sufficient to prove the knowledge element in this case. He relies on *Cnty. Court v. Allen*, 442 U.S. 140, 160 (1979), for the proposition that there must be "ample evidence" other than the permissive inference to sustain a conviction. However, Appellant does not contend that the military judge's instruction on the permissive inference was error and, in any event, his failure to object to the instruction at trial constitutes forfeiture, in the absence of plain error. *See* R.C.M. 920(f). Appellant looks to *United States v. Ford*, 23 M.J. 331 (C.M.A. 1987), for the proposition that this court must conduct a case-specific analysis of the facts to determine whether the permissive inference was properly applied.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *see United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). Our assessment of legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency requires courts to review the evidence in the light most favorable to the government. If any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see Reed*, 54 M.J. at 41.

In *Ford*, decided nearly 30 years ago, the CAAF noted that:

> This Court has previously held that evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to show beyond a reasonable doubt that an accused used marihuana. We also have recognized that military law for over 35

> years has provided that a permissive inference of wrongfulness
> may be drawn from such a circumstantial showing of marihuana
> use.

23 M.J. at 332. Accordingly, admission of such evidence in this case was sufficient as a matter of law to permit Appellant's conviction for wrongful use of cocaine. *See United States v. Bond*, 46 M.J. 86, 89 (C.A.A.F. 1997).

Moreover, the simple fact that the evidence has raised an innocent or unknowing ingestion defense does not require the Government to rebut such a defense in order for members to find Appellant guilty. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Nonetheless, Appellant contends that the Government "offered no evidence other than the permissive inference to support its allegation that Appellant's use of cocaine was knowing and wrongful." Specifically, Appellant notes that the Government's expert witness "confirmed that the presence of a cocaine metabolite is not proof of knowing or wrongful ingestion."

However, we note that the expert's testimony was comprehensive, providing evidence of how cocaine is metabolized in the body, how long cocaine and its metabolite BZE are typically retained in the body, how the drug testing process works at the laboratory, and a summary of the scientific results of Appellant's specimen tests. In addition, he ultimately concluded that based on his assessment the tests on Appellant's sample were valid and done in accordance with laboratory procedures.

Although the cross-examination of witnesses elicited possibilities—other than knowing ingestion—for how Appellant's urine sample could have tested positive for BZE, the evidence regarding Appellant's activities during the charged timeframe, the collection of the specimen, along with the results of the drug-testing process and the expert testimony, provided sufficient evidence for the members to find beyond a reasonable doubt that Appellant knowingly and wrongfully used cocaine. The members were not persuaded by alternative theories as to how either cocaine or BZE could have contaminated his specimen. The evidence presented to the members was factually sufficient to support the conviction beyond a reasonable doubt

We find that there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Appellant is guilty of wrongful use of cocaine, and that the evidence is, therefore, legally sufficient. Furthermore, weighing all the evidence admitted at trial and mindful of the fact that we did not see or hear the witnesses, this court is convinced beyond a reasonable doubt that Appellant is guilty of wrongful use of cocaine.

**D. Improper Findings Argument**

The evidence at trial included testimony regarding the cost of cocaine—between $2,000 and $4,000 per ounce and over $100 per gram—and the physical effects caused by cocaine being a stimulant. The court-martial was also presented, through the testimony of SSgt MC, Appellant's statements to investigators about how Appellant drank alcohol while barhopping with friends in Miami and Appellant's acknowledgement that "the only way . . . it [the cocaine] could be in [his] system [was] someone must have put it in [his] drink." No evidence was presented to the members regarding the physical effects of alcohol on Appellant or on people in general.

During his findings argument, trial counsel outlined four reasons why the members should apply the permissive inference under the facts in this case. Trial counsel argued that, first, "cocaine is expensive." Trial counsel explained:

> Members, you know that drugs just don't fall from the sky onto unsuspecting people, certainly not at recreational doses. Drug dealers and drug users don't just go around slipping narcotics into unsuspecting people without their knowledge. Why? Because cocaine has value. Drug dealers and drug users are either going to use the substance or they're going to sell it. They're not just giving it away on the sly without someone knowing about it. It doesn't make sense.

Trial counsel proclaimed "cocaine is a stimulant" as the second reason. Accordingly, trial counsel argued:

> Second, cocaine is a stimulant. It's not a date rape drug. Nobody's trying to slip it into your drink and knock you out and take advantage of you. Dr. Turner told you, it gives you a rush. It gives you that high. And it's not found naturally in your body. That's why people take it. It doesn't make sense.

Next, trial counsel identified the third reason: "the accused was out partying." To further this argument, trial counsel continued:

> You heard from [SSgt MC] who talked to the accused right after the positive drug test and he told you that Friday night he was out in Miami. He went to a bonfire. He went to some bars. He barhopped and he was drinking.

> Members, use your common sense, your knowledge of the ways of the world, what you know about alcohol. It lowers your inhibitions, makes you more likely to try new things, less likely to consider the consequences.

Trial counsel claimed that the "fourth and final reason is that the accused's story just doesn't make sense with the science." Trial defense counsel did not object to these arguments.

"Improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). Because there was no objection at trial, we review the propriety of trial counsel's argument for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). To prevail under a plain error analysis, Appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (quoting *Kho*, 54 M.J. at 65).

Trial counsel presented the members with an appropriate argument based on properly admitted, relevant evidence and reasonable inferences derived therefrom. Trial counsel also properly invited the members to use their common sense and knowledge about the widely known and generally understood physical effects of alcohol in evaluating the case. Appellant has failed to show that trial counsel's argument was in fact error, let alone plain or obvious error. Having considered the content, and indeed the context, of trial counsel's findings argument, we find no error that materially prejudiced Appellant. *See United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000).

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court