*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and GASTON,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Matthew D. NORWOOD**
Machinist's Mate (Nuclear) First Class Petty Officer (E-6),
U.S. Navy
Appellant

**No. 201800093**

Decided: 9 August 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Commander Shane E. Johnson, JAGC, USN. Sentence adjudged 12 October 2017 by a general court-martial convened at Joint Base Pearl Harbor-Hickam, Hawaii, consisting of officer members. Sentenced approved by the convening authority: Reduction to E-1, confinement for 18 months, and a dishonorable discharge.

For Appellant: William E. Cassara, Esq.; Lieutenant Commander Jacob E. Meusch, JAGC, USN.

For Appellee: Captain Brian L. Farrell, USMC; Lieutenant Kurt W. Siegal, JAGC, USN.

Senior Judge HITESMAN delivered the opinion of the Court, in which Chief Judge CRISFIELD and Judge GASTON joined.

_____

**PUBLISHED OPINION OF THE COURT**

_____

HITESMAN, Senior Judge:

Appellant was convicted of a single specification of sexual abuse of child, his 15 year-old niece, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012). This case presents an issue of first impression for this court regarding the use of prior consistent statements under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 801(d)(1)(B), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2016 ed.), as amended in 2016.

The appellant raises six assignments of error (AOE): (1) that the military judge abused his discretion when he admitted a videotaped forensic interview of the victim and allowed witnesses to recount her prior statements to them, (2) that the military judge abused his discretion when he allowed lay and expert witness "human lie detector" testimony, (3) that the appellant's conviction is legally and factually insufficient, (4) that the trial counsel's improper arguments constitute prosecutorial misconduct, (5) that the military judge abused his discretion when he allowed the victim to speculate as to appellant's intent in touching her, and (6) that civilian defense counsel was constitutionally ineffective.

We consolidated the appellant's abuse of discretion claims and reordered the remaining AOE's. We find that certain language in the Specification is factually insufficient, except it out, and reassess the sentence. We also find several other errors but none that prejudiced the substantial rights of the appellant.

## I. BACKGROUND

EN and her younger brother, RJ, visited the appellant during December of 2015 and stayed with him in his small basement apartment in Honolulu, Hawaii. EN was fifteen at the time and RJ was twelve years old. At the time, they both lived with their mother and stepfather in Idaho. The appellant is their uncle—their father's brother. On 30 December 2015, the appellant and EN were watching a movie and both were lying on the couch. RJ was in the appellant's nearby bedroom playing video games on the appellant's computer. EN's back was sore from sleeping on the couch and the appellant offered to give her a back massage. EN was wearing a bra under a tank top, which the appellant recommended she take off. After she had removed her bra leaving her tank top on, the appellant began to massage EN. In addition to rubbing

2

her back, the massage included the appellant putting his hands under the waistband of her shorts and underwear where he touched the top of her pubic hair area above her vagina. He then worked one hand up under EN's shirt and massaged her right breast while his other hand rubbed the top of her thigh and moved up towards her private areas. EN pushed the appellant's hand away when it got about half way up her shorts as it moved towards her vagina. Appellant then pulled EN onto his lap where EN could feel his semi-erect penis with her buttocks. Appellant asked EN about her sexual experience and whether she had a boyfriend back home. EN responded that she "hadn't done anything but kissing," after which the appellant pushed her off of him. EN then changed into her pajamas and lay down on the couch with the appellant and RJ joined them to watch another movie.

EN disclosed the abuse to her friend, MP, over the phone about a month and a half later. MP told her father, who informed EN's stepfather. EN then told her mother, GB, and her stepfather about what had happened. GB informed the police and, in the presence of GB, EN told a police officer what had happened. Several days later, during a videotaped forensic interview, EN again described what had happened with the appellant.

Within two weeks of the abuse, the appellant called his brother, the father of EN and RJ. He told him that he had done something terrible and he would kill or disown him if he knew. The appellant did not disclose what he had done to deserve such treatment, but he denied that it had anything to do with EN. Approximately a year before trial, RJ moved in with his father and was never interviewed by law enforcement.

Additional facts necessary to resolve the AOEs raised are discussed below.

## II. DISCUSSION

### A. Abuse of Discretion

The appellant claims that the military judge abused his discretion when he admitted EN's videotaped forensic interview and her accounts to other witnesses as prior consistent statements; allowed "human lie detector" testimony from lay and expert witnesses; and allowed the victim to speculate as to the appellant's intent in touching her.

We review a military judge's admission or exclusion of evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States*

*v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

Relevant evidence, as defined by MIL. R. EVID. 401, may be excluded by the military judge "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." MIL. R. EVID. 403. So long as the military judge conducts a proper balancing test the ruling will not be overturned unless there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citation and internal quotation marks omitted). We owe less deference to the military judge who fails to articulate a MIL. R. EVID. 403 balancing analysis on the record, and no deference will be afforded to a ruling in which the MIL. R. EVID. 403 analysis is altogether absent. *Id.*

### 1. Prior consistent statements

After EN testified under oath during the government's case-in-chief, appellant's trial defense counsel cross-examined her about information in her testimony that had not been previously recorded, about inconsistencies with her prior accounts, and about practicing her testimony with the assistance of trial counsel. On redirect, the government offered, over defense objection, a videotape of EN's forensic interview recorded shortly after she reported the abuse. The military judge admitted a portion of the videotape as a prior consistent statement. Subsequently, the military judge also allowed several other witnesses to testify about previous statements by EN as prior consistent statements.

In 2016, the President amended MIL. R. EVID. 801(d)(1)(B), addressing prior consistent statements, to mirror the federal rule. *See* Exec. Order No. 13730, 81 Fed. Reg. 33,331 (May 20, 2016); FEDERAL RULE OF EVIDENCE (FED. R. EVID.) 801(d)(1)(B). This change split the previous rule into two parts to determine when a prior consistent statement may be admitted into evidence. The first part permits the use of a prior consistent statement to rebut a "charge that the declarant recently fabricated . . . or acted from a recent improper influence or motive in . . . testifying." MIL. R. EVID. 801(d)(1)(B)(i). The second part permits the use of a prior consistent statement to rehabilitate the credibility of a witness "attacked on another ground." MIL. R. EVID. 801(d)(1)(B)(ii). The interplay of these two parts presents an issue of first impression for this court.

Only the second part of the amended rule is new and it does not change the admissibility of prior consistent statements used only to rehabilitate a witness' credibility. It does, however, change what the statement can be used for once it is admitted into evidence. A prior consistent statement, not other-

wise admissible under MIL. R. EVID. 801(d)(1)(B)(i), can now be used as substantive evidence as well as to rehabilitate the witness' credibility. *United States v. Ledbetter*, 184 F. Supp. 3d 594, 600 (S.D. Ohio 2016) (citing *Berry v. Beauvais*, No. 13-cv-2647-WJM-CBS, 2015 U.S. Dist. LEXIS 119974 (D. Colo. Sept. 9, 2015)); *see* FED. R. EVID. 801(d)(1)(B)(ii) advisory committee notes to 2014 amendments (stating "that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well"); *United States v. Coleman*, 72 M.J. 184, 188 (C.A.A.F. 2013) (stating that a prior consistent statement that is not admissible under MIL. R. EVID. 801(d)(1)(B) might be admissible to "rehabilitate the in-court testimony of a witness").

The plain language of the rule is clear that "another ground" under part (ii) means a ground other than to rebut a charge of recent fabrication, influence, or motive found in part (i). *Cf. United States v. Sager*, 76 M.J. 158, 162 (C.A.A.F. 2017) (finding that "asleep," "unconscious," or "otherwise unaware" are separate and distinguishable theories of criminal liability because of the meaning of "otherwise"). Thus, while part (i) requires the fabrication, influence, or motive to be recent with respect to the in-court testimony, there is no such temporal requirement attached to part (ii).

This distinction is important because rebutting a challenge of recent fabrication logically permits a more expansive use of prior statements to show that nothing substantial has changed in the declarant's testimony. On the other hand, rehabilitating the credibility of the declarant may require something more precisely related to explaining or rebutting the specific manner of the attack on the witness' credibility. *United States v. Cotton*, 823 F.3d 430, 437 (8th Cir. 2016); *see United States v. Finch*, 78 M.J. 781, 787 (A. Ct. Crim. App. 2019); *see also* MIL. R. EVID. 801(d)(1)(B)(ii) analysis, MCM App. 22 at A22-61 (reciting almost verbatim the same analysis for FED. R. EVID. 801(d)(1)(B)(ii) advisory committee notes to 2014 amendments). For example, if the declarant's credibility is attacked on another ground such as impeachment by omission because she testified to new information not previously mentioned in other statements, admitting a prior statement that is devoid of the fact now at issue, is not actually consistent with the testimony attacked and does little to rehabilitate the declarant's credibility based on the specific type of attack. *See United States v. Pierre*, 781 F.2d 329 (2d Cir. 1986) (where a witness was impeached for omitting key facts in his notes, a subsequent report containing the key facts was admitted as a prior consistent statement and rehabilitated his credibility). *But see United States v. J.A.S.*, 862 F.3d 543, 545 (6th Cir. 2017). Conversely, when the witness' credibility is attacked on another ground such as faulty memory, less precise prior statements to rehabilitate the witness' credibility may be admitted. *See United States v. Cox*, 871 F.3d 479 (6th Cir. 2017) (holding where witness' credibility was attacked for a faulty memory, an entire prior report of abuse was admitted as a

prior consistent statement and was allowed to rehabilitate her credibility and for the truth of the matter asserted).

Whether a witness' credibility can be properly rehabilitated is left to the discretion of the military judge. A military judge must use the MIL. R. EVID. 403 balancing test to assess the prior consistent statement to ensure that its probative value in rehabilitating the witness' credibility is not substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." MIL. R. EVID. 403. Otherwise, part (ii) of the rule would consume part (i) by eliminating the significance of the temporal requirement and would allow any prior ostensibly consistent statement to be admitted into evidence and used substantively. *See* FED. R. EVID. 801(d)(1)(B)(ii) advisory committee notes to 2014 amendments (discussing the intent that a FED. R. EVID. 403 balancing test would ensure that the prior statement can properly rehabilitate the witness' credibility).

Here, the appellant argues that (1) the trial defense counsel did not allege the EN's testimony was coached by the trial counsel or that any part of her testimony was recently fabricated, (2) that the military judge applied the wrong subpart of MIL. R. EVID. 801(d)(1)(B), and (3) that the military judge erred by admitting the prior consistent statements in their entirety and without a MIL. R. EVID. 403 analysis.

After closely examining the record, we disagree with the appellant and find that the assistant civilian defense counsel clearly implied that EN's testimony was coached. On cross-examination, EN confirmed that she knew that the assistant civilian defense counsel wanted to speak to her but refused to talk to him. EN also confirmed that she spoke with the trial counsel team, met them in the courtroom where she sat in the witness chair and answered likely questions, and was told to tell the truth. The assistant civilian defense counsel then asked "[h]ave you ever before had to practice telling the truth or is this like the first time?" EN replied that this was the first time. Later when EN was being impeached for omitting certain facts in her prior videotaped forensic interview, she responded that she was not sure if she had told the interviewer that the "rest of the trip [after the abuse] was awkward." The assistant civilian defense counsel stated: "When did you remember that? Yesterday when you were practicing your testimony?" Defense counsel clearly implied that some parts of EN's testimony changed after practicing her testimony with the trial counsel.

The military judge relied on MIL. R. EVID. 801(d)(1)(B)(ii) to admit the videotaped forensic interview of EN as a prior consistent statement and ruled: "I do find that the defense did attack this witness' credibility on another ground. That other ground is the government has somehow coached the

witness."[1] The military judge went on to add: "I'm going to admit it for that purpose, to rebut—excuse me, to rehabilitate this declarant's credibility, as she's been attacked on another ground, that ground, she has been coached by the government counsel."[2]

We find error in the military judge's reliance on part (ii) of the rule, because the defense implication that EN was coached in preparation for testifying is an implied charge of recent fabrication or recent improper influence that squarely falls under part (i) of the rule. MIL. R. EVID. 801(d)(1)(B)(i). Simply referring to the impeachment as a charge of coaching does not create a different ground for purposes of MIL. R. EVID. 801(d)(1)(B).

The government argues that the prior consistent statements were otherwise admissible under MIL. R. EVID. 801(d)(1)(B)(ii) to rehabilitate EN's credibility because she was impeached through inconsistent and omitted statements. While we agree that some of the prior statements could have been admitted under that reasoning, we find such analysis unnecessary because the prior consistent statements are clearly admissible under MIL. R. EVID. 801(d)(1)(B)(i) to rebut the implied charge that EN's testimony was coached. Accordingly, we find that the statements were properly admissible under MIL. R. EVID. 801(d)(1)(B)(i) and appellant was not prejudiced by the military judge's erroneous application of part (ii) of the rule. *See United States v. Miller*, 46 M.J. 80, 84 (C.A.A.F. 1997) (finding the error harmless because a stronger case could be made for admission of evidence on a different basis).

Having determined that prior consistent statements were admissible under MIL. R. EVID. 801(d)(1)(B)(i), we next analyze whether each of the four admitted statements were actually prior consistent statements and whether they were properly admitted under MIL. R. EVID. 403. Four prior consistent statements were admitted into evidence: (1) EN's initial disclosure to her friend MP, (2) EN's disclosure to her mother, GB, (3) EN's statements to police, as overheard by and described by GB, and (4) a substantial portion of the video recording of EN's forensic interview, which took place less than two weeks after EN first disclosed abuse. The video was admitted in its entirety, omitting only some introductory rapport-building. The military judge conducted a MIL. R. EVID. 403 balancing test with respect to the videotaped forensic interview of EN, although, as we noted above, he incorrectly assessed the probative value of the evidence as rehabilitating EN's credibility instead

---

[1] Record at 344.

[2] *Id.* at 345.

of rebutting a charge of recent fabrication or improper influence. The military judge did not conduct a MIL. R. EVID. 403 analysis when admitting the testimony of GB and MP as prior consistent statements. Accordingly, we afford these rulings little deference and examine the record for ourselves.

EN's statements to MP were very brief and consisted of just a few sentences. Likewise EN's disclosures to her mother and the police officer were also brief and contained just a few additional details. Although the statements to her mother and the police officer contained at least one inconsistency identified by the assistant civilian defense counsel regarding what EN was wearing, the statements were generally consistent with her testimony. In light of the defense implication that EN was coached by the trial counsel, the probative weight of the video and the three statements was significant to show that EN's account of the abuse had been generally consistent from her first disclosure until her testimony at trial. The four prior consistent statements were not needlessly cumulative. The video was compelling and of high quality, and the members could see and hear EN for themselves. In contrast, the additional statements to MP, GB, and the police officer were brief but given to separate people at different times. Although a military judge has the discretion to exclude some parts or all of a prior consistent statement that are "cumulative accounts of an event," we do not find that the additional statements to MP, GB, and the police officer required exclusion. *See* MIL. R. EVID. 801(d)(1)(B)(i) analysis, MCM App. 22 at A22-61. We find the probative weight of the videotaped forensic interview and the three additional prior consistent statements was not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence. MIL. R. EVID. 403.

Because the prior consistent statements were admissible under MIL. R. EVID. 801(d)(1)(B)(i) and MIL. R. EVID. 403, we find that the appellant's substantial rights have not been prejudiced.

### 2. Lay and expert witness human lie detector testimony

The appellant claims the military judge abused his discretion by allowing "human lie detector" testimony from Dr. F, the government's expert in clinical, forensic, and child psychology; EN's friend, MP; and EN's mother, GB, all indicating they believed the victim was telling the truth. We disagree with respect to Dr. F and MP, but agree that GB gave human lie detector testimony.

"Human lie detector testimony" has been defined as "an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case." *United States v. Kasper*, 58 M.J. 314, 315 (C.A.A.F.

2003). The Court of Appeals for the Armed Forces (CAAF) has been "resolute in rejecting the admissibility of so-called human lie detector testimony . . . ." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (quoting *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)). This class of testimony is inadmissible because it exceeds the limits of permissible character evidence governed by MIL. R. EVID. 608 (evidence of character, conduct, and bias of witness), exceeds the scope of the witness' knowledge, in violation of MIL. R. EVID. 701 (opinion testimony by lay witnesses), and usurps the fact-finder's exclusive function to weigh evidence and determine credibility. *See Kasper*, 58 M.J. at 315. "The prohibition applies not only to expert testimony, but also to conclusions as to truthfulness offered by a nonexpert." *Id.*; *see also United States v. Petersen*, 24 M.J. 283, 284 (C.M.A. 1987) ("We are skeptical about whether any witness could be qualified to opine as to the credibility of another."). The admission of "human lie detector" testimony is error, regardless of which party offers it.

a. Testimony of Dr. F

Prior to the government calling Dr. F as an expert witness, the civilian defense counsel objected, arguing that Dr. F's testimony would not be helpful and would constitute human lie detector testimony. The military judge overruled the objection and found that the testimony would be helpful. The military judge invited the civilian defense counsel to object during Dr. F's testimony if it became human lie detector testimony. The government's witness, Dr. F, testified about the symptoms typically observed in child sexual abuse victims such as accommodation, delayed reporting, and other counterintuitive behaviors. Dr. F recognized that EN had testified that her own behavior changed after she returned from Hawaii. Trial counsel then asked Dr. F with respect to such behaviors described by EN: "Could these changes that [EN] observed in herself be a consequence of the sexual abuse that she experienced in Hawaii?"[3] Dr. F replied: "Yes."[4] The civilian defense counsel did not object to the question. On cross-examination, Dr. F stated several times that observed behaviors and symptoms do not "in any way bear on the credibility of the underlying allegation"[5] and conceded that there were "any number of reasons"[6] a person might exhibit the behaviors that EN exhibited, including not

---

[3] *Id.* at 449.

[4] *Id.*

[5] *Id.* at 461-2.

[6] *Id.* at 457.

having been abused at all.[7] The appellant contends that Dr. F, by responding to the trial counsel's presumptive and leading question, improperly commented on the veracity of EN's testimony.

In a trial involving sexual abuse of a child, "an expert may testify as to what symptoms are found among children who have suffered sexual abuse and whether the child-witness has exhibited these symptoms." *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010). This includes testimony regarding "counterintuitive behaviors" exhibited by victims of sexual abuse. *United States v. Flesher*, 73 M.J. 303, 313, 316 (C.A.A.F. 2014). During cross-examination, the opposing party may explore the basis for the expert's opinion, including the assumptions and information upon which the expert relied. MIL. R. EVID. 703. Here, the fact that Dr. F considered EN's testimony does not turn her otherwise admissible expert opinion into human lie detector testimony. *See United States v. Hill-Dunning*, 26 M.J. 260, 262 (C.M.A. 1988) (stating there is "a distinction between the expert who has an opinion based upon a belief in the truthfulness of what another person has told him and the expert whose opinion is that the other person is truthful").

Dr. F did not provide human lie detector testimony because she never opined or implied that EN was truthful in alleging that the appellant sexually abused her, nor did Dr. F express an opinion that the appellant was guilty. We find no error in permitting the testimony of Dr. F.

### b. Testimony of MP and GB

EN's best friend, MP, testified regarding the telephone call during which EN first disclosed that the appellant had "put his hands up her shirt and down her pants."[8] MP was asked by trial counsel to describe EN's demeanor as she was telling MP what happened in Hawaii. MP stated that EN was very upset, shaken, and crying and that MP "could tell [EN] was very, very affected."[9] Lay opinion testimony is admissible if the opinion is based on the witness' perception and the opinion is helpful to the members in understanding the witness' testimony. *United States v. Byrd*, 60 M.J. 4, 7 (C.A.A.F. 2004). MP was asked for and offered permissible testimony of EN's demeanor. She did not provide any testimony regarding her opinion of EN's veracity or the appellant's guilt. We find no error in admitting MP's testimony.

---

[7] *Id.* at 456.

[8] *Id.* at 360.

[9] *Id.* at 360.

The assistant civilian defense counsel cross-examined EN's mother, GB, regarding her family's refusal to speak to the defense team prior to trial, and implied that the family was "hiding [ ]witnesses."[10] GB stated: "I didn't want defense talking to anyone about this case."[11] On redirect examination, the trial counsel asked GB: "[W]hy did you choose to not answer defense counsel's phone calls or allow your children to speak with defense counsel?"[12] GB responded: "Because they're working for the person that molested my daughter."[13] The assistant civilian defense counsel objected but the military judge overruled the objection and allowed the question and answer to stand. We find that human lie detector testimony was implicit in GB's response.

The government argues that the defense cross-examination invited the human lie detector testimony. We disagree. The assistant civilian defense counsel's cross-examination of GB regarding her family's refusal to speak with the defense did not create an error and then attempt to take advantage of it. *United States v. Martin*, 75 M.J. 321, 325 (C.A.A.F. 2016). This did not leave the members with a "skewed view of the evidence" that only the government's subsequent error could rectify. *Id.* GB could have answered in a number of ways without giving her opinion that EN was telling the truth and the appellant was guilty. Allowing GB to give human lie detector testimony was error and an abuse of discretion. The military judge should have sustained the objection and issued an immediate curative instruction.

### c. No prejudice to the appellant

Having found error in allowing GB to testify that the appellant molested her daughter, implying that the appellant is guilty and that EN is telling the truth, we now consider whether the appellant's substantial rights were prejudiced. Four factors determine when a non-constitutional error substantially influenced the member's verdict: (1) the strength of the government's case, (2) the strength of the defense's case, (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999). Both the government's case and the appellant's case hinged on EN's credibility. EN's prior consistent statements had already been admitted into evidence. GB's human lie detector testimony was

---

[10] *Id.* at 385.

[11] *Id.* at 383.

[12] *Id.* at 403.

[13] *Id.* at 404.

material because it bolstered EN's testimony and credibility. However, the quality and impact of this evidence was low because the members would naturally expect GB to believe her young daughter. The evidence added very little to the weight of the evidence already against the appellant, and moreover, the military judge eventually gave a curative instruction with regard to this testimony. Although the military judge overruled the defense objection at the time, he revisited the issue two hours later after the government's next two witnesses and issued the members a limiting instruction that they could not consider GB's opinion as "evidence that a crime [has] occurred or that the witness is credible."[14] The military judge issued the instruction again during argument when the assistant trial counsel commented that the other witnesses believed EN."[15] While an immediate curative instruction would have been ideal, we find that the delayed instructions were sufficient to cure the error. Without evidence to the contrary, we assume the members followed the instructions of the military judge. *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018). Accordingly, we find that no substantial right of the appellant was prejudiced by the erroneous admission of GB's testimony regarding her opinion of EN's veracity or the appellant's guilt.

### 3. Allowing the victim to speculate as to the appellant's intent

As an element of the charged offense under Article 120b, UCMJ, the government had to prove beyond a reasonable doubt that the appellant touched EN with the specific intent to gratify his sexual desires. Trial counsel asked EN: "Why do you think he was touching your breast and trying to put his hand into your shorts?"[16] The immediate defense objection was overruled by the military judge without discussion. EN responded: "Probably for sexual purposes."[17]

The government argues that EN was providing a lay opinion based on her perception as permitted by MIL. R. EVID. 701. We disagree. The question clearly called for EN to impermissibly speculate on what the appellant was thinking or intending. The military judge erred by allowing the question and answer to stand, and by not providing an immediate curative instruction to the members.

---

[14] *Id.* at 425.

[15] *Id.* at 558.

[16] *Id.* at 293.

[17] *Id.*

Having found error, we now consider whether the appellant's substantial rights have been prejudiced under the *Kerr* factors outlined above. EN's credibility was the linchpin for both the government's case and the appellant's case. EN was the victim and only substantive witness for the government. However, EN's opinion of the appellant's intent added very little weight to prove the appellant touched her with the specific intent of gratifying his sexual desires, which the members could reasonably and readily infer from the facts already before them. Her testimony that a 30-year-old man, lying on a couch with her, a 15-year-old girl, (1) put his hands in her shorts just above her pubic region, (2) fondled one of her breasts with one hand while his other hand moved up her thigh towards her vagina, and (3) placed her buttocks on his lap where she could feel his semi-erect penis is strong circumstantial evidence that the accused's actions were committed with the necessary specific intent. Moreover, the improper opinion testimony is material in that it attempts to prove the intent element of the charged offense. However, the quality of the evidence is relatively low when the rest of EN's testimony is considered. As the trial counsel's direct examination continued, EN said she was "confused," and "did not know why the appellant was touching her."[18] Given the strong circumstantial inferences that can be made from EN's other testimony, her speculation would have had little impact on the members. In addition, the trial counsel team did not refer to EN's speculation of the appellant's intent in closing or rebuttal arguments. Accordingly, we find that the appellant's substantial rights were not prejudiced.

## B. Legal and Factual Sufficiency of the Conviction

The appellant contends that his conviction for sexually abusing EN is legally and factually insufficient. We review questions of legal and factual sufficiency de novo. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To determine legal sufficiency, we ask whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015). In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having

---

[18] *Id.*

observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

The appellant was convicted of touching the breast, buttocks, groin, and inner thigh of EN, the appellant's 15-year-old niece, in violation of Article 120b, UCMJ. To support this conviction, the government needed to prove beyond a reasonable doubt that: (1) the appellant committed a lewd act upon EN by intentionally touching, directly and through the clothing, the breast, buttocks, groin, and inner thigh of EN; (2) that EN had not attained sixteen years of age; and (3) that the appellant did so with the intent to gratify his sexual desire. *Id.*

Here, it is uncontroverted that EN was fifteen at the time of the inappropriate touching. EN provided the only evidence of the manner in which the appellant touched her to include how he touched her back, stomach, upper pubic area, right breast, leg, and thigh with his hands directly and over her clothes. EN also testified that the appellant pulled her onto his lap and that she could feel his semi-erect penis on her buttocks through their clothes. Both trial and defense counsel recognized that the case hinged on EN's credibility. The members saw and heard EN's testimony as well as observed her during a videotaped forensic interview. The members heard testimony that recounted three additional statements made by EN describing the sexual abuse she suffered at the hands of the appellant. EN also testified that the appellant "apologized for being an asshole"[19] the day after the abuse. Finally, the appellant's brother, EN's father, testified and described the appellant's distraught and drunken call in which he claimed to have done something horrible for which he would disown the appellant if he found out.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have found that the appellant touched EN with the intent to gratify his sexual desire. Furthermore, after weighing the evidence

---

[19] *Id.* at 296.

in the record of trial and making allowances for not having personally observed the witnesses, we too are convinced beyond a reasonable doubt that the appellant sexually abused EN.

However, based on the record before us, we are only convinced that he did so by touching EN's breast, buttocks, and thigh. EN's forensic interview and testimony support the finding that the appellant only touched the top of her pubic region where her pubic hair starts and the top of her thigh. Accordingly, we find that the evidence is legally and factually sufficient to sustain a finding of guilty to the Charge but only to a modified finding of guilty to the Specification. We will except the words "groin" and "inner" from the Specification in our decretal paragraph and reassess the sentence below.

## C. Sentence Reassessment

Having set aside the finding of guilty to some of the language alleged in the specification, we must now determine if we are able to reassess the appellant's sentence. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

In determining whether to reassess a sentence or to order a sentencing rehearing, we consider the five factors espoused in our superior court's holding in *Winckelmann*: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15-16.

Because our findings do not effect significant changes to the language of the offense and do not completely set aside the findings of guilty, there is no change in the penalty landscape. The remaining language captures the gravamen of the criminal conduct for which the members convicted and sentenced the appellant, and the modification does not render any evidence presented at trial inadmissible or irrelevant. Furthermore, this is an offense with which we, as appellate judges, have in-depth experience and familiarity. The evidence of the appellant's culpability for sexually abusing his 15-year-old niece remains the same. We conclude that sentence reassessment is appropriate. We are confident that, absent the excepted language, the court-martial would have imposed no less of a sentence than the members ad-

15

judged—dishonorable discharge, reduction to pay grade E-1, and 18 months' confinement.

## D. Improper Argument

The appellant contends that the trial counsel and assistant trial counsel committed prosecutorial misconduct during closing and sentencing arguments when they interjected their personal opinions of the evidence, vouched for government witnesses, and used inflammatory language.

Prosecutorial misconduct occurs when a prosecutor "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). In general, it is "defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88). The conduct of the "trial counsel must be viewed within the context of the entire court-martial . . . not [just] on words in isolation." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

Improper argument is a type of prosecutorial misconduct that involves a question of law that we review de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018). When objected to at trial, we review improper argument for prejudicial error. *Id.* "[When] no objection is made, we hold the appellant has forfeited his right to appeal and review for plain error." *Id.* Plain error "requires that: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Pabelona*, 76 M.J. 9, 11 (C.A.A.F. 2017) (citation and quotation marks omitted).

We find error in the argument of the assistant trial counsel as objected to by the defense counsel. We also find plain or obvious error in some, but not all, of the challenged parts of the trial counsel's and assistant trial counsel's arguments to which the defense did not object.

### 1. Interjection of personal beliefs and opinions

"It is improper for a trial counsel to interject herself into the proceedings by expressing a personal belief or opinion as to the truth or falsity of any testimony or evidence." *Fletcher*, 62 M.J. at 179 (citation and internal quotation marks omitted). Personal beliefs and opinions may be in the form of improper vouching for the government's case or by offering personal views of the evidence and appellant's guilt. *See id.* at 180. Improper expression of the trial

counsel's views of the evidence can include "offering substantive comments on the truth or falsity of the testimony and evidence." *Id.* at 180.

Appellant argues that the trial counsel improperly vouched for EN's credibility. We disagree. A fair reading of the arguments of counsel show that the trial counsel did not offer substantive comments or interject her personal opinion, view, or beliefs regarding the truth of EN's testimony. Rather, she merely argued that EN's testimony was credible based on the evidence, the circumstances surrounding her allegations and disclosures, and the absence of any discernable motive to lie.

### 2. Inflaming the prejudices and passions of the members

It is a basic rule of our profession that a "prosecutor should not make arguments calculated to appeal to improper prejudices of the trier of fact. The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty." CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION STANDARD 3-6.8(C) (AM. BAR ASS'N 2015). As courts have often stated, "the trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237. To that end, the R.C.M. and our case law provide that it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983); R.C.M. 919(b), discussion. An accused is supposed to be tried and sentenced as an individual based on the offense(s) charged and the legally and logically relevant evidence presented. It is generally impermissible to ask members to perform a role beyond evaluating the evidence. *See, e.g., Young*, 470 U.S. at 18 (finding error in imploring the jury to "do its job"); *Brown v. State*, 680 S.E.2d. 909, 912-15 (S.C. 2009) (finding error in asking the jury to "speak up" for the child victim). Several of trial counsel's remarks run counter to these basic principles.

Trial counsel are allowed to "forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). One factor to consider is whether the appellant was charged with a corresponding offense that would justify the negative characterization and whether the characterization is an inference fairly drawn from the evidence.

The assistant trial counsel, in closing argument referred to the appellant as a child molester numerous times. The appellant avers that the assistant trial counsel was attempting to inflame the members to convict the appellant based on the general nature of the crime. We disagree. Here, the appellant was charged with the sexual abuse of a minor. Referring to the appellant as a child molester is a reasonable inference based on the evidence supporting the allegation that he sexually abused a minor.

However, during the rebuttal argument, the assistant trial counsel argued:

> [T]he defense is asking you to give child molesters a license to commit these crimes, because if you can't find the accused guilty in this case, the only way—the only way a child molester could ever be convicted [is] if he is literally caught in the act.[20]

Of course, defense counsel did not make such a direct request, and even if it could be implied, it bears no relevance on the appellant's guilt and could only have served to inflame the passions or prejudices of the members. We find no legal basis that supports the trial counsel's invocation to the members to perform an impermissible role and convict the appellant, not on the evaluation of the evidence before them, but based on the fear that not convicting would be somehow encouraging other child molesters.

Finally, the appellant claims that during sentencing argument, the trial counsel's "justification to a co-worker" argument was improper and prejudiced the members against the appellant. We disagree. The argument, while of questionable effect, is an attempt to help the members give weight to the government evidence by having them consider justifying their adjudged sentence to their co-workers. The members were properly instructed by the military judge to determine an appropriate sentence based on the evidence. Seeing no evidence to the contrary, we presume that the members followed the instruction of the military judge. *Short*, 77 M.J. at 151.

### 3. Objections raised

The assistant trial counsel argued that EN's family members refused to cooperate with the defense because they believed EN. The military judge overruled the defense counsel's objection but still issued a curative instruction to the members stating that: "It is your exclusive province, the court members, to determine the credibility of the witnesses . . . ."[21] While the argument was improper and the objection was erroneously overruled, we find the instruction was adequate to cure the error and we will evaluate the prejudice incurred below.

---

[20] *Id.* at 553.

[21] *Id.* at 559.

*4. Prejudice to the appellant*

Finding error in some of the assistant trial counsel's arguments, we now turn to the third element of our plain error analysis and examine the record for prejudice. *Pabelona*, 76 M.J. at 12. In cases of prosecutorial misconduct, we evaluate potential prejudice by examining the severity of the misconduct, the measures adopted to cure the misconduct, and the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. "[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

We first look at the severity of the misconduct. In *United States v. Pabelona*, this court found that despite prosecutorial misconduct, the severity of that misconduct was low because it was limited to the arguments of a "lengthy four day trial" and consisted of "relatively isolated comments" and "cover[ed] a small fraction of the trial." No. 201400244, 2015 CCA LEXIS 424, at *9 (N-M. Ct. Crim. App. 15 Oct. 2015), *aff'd*, 76 M.J. 9 (C.A.A.F. 2017). The appellant's trial lasted for three days and the assistant trial counsel used improper arguments and remarks just two times during approximately an hour of combined closing, rebuttal, and sentencing argument. Taken as a whole and in the context of an emotionally charged trial, the assistant trial counsel's improper arguments and comments amounted to only a very small fraction of the trial. Even though EN's credibility was critical to both sides, each comment was made only one time. Although some of the assistant trial counsel's remarks were improper, we find that the misconduct taken in proper context was not unduly severe.

Next, we look at whether there were any curative measures taken. The military judge issued a curative instruction only after overruling the defense counsel's objection to the argument that EN's family believed her. The military judge should have sustained the objection and given the members a stronger instruction to remind them that argument of counsel is not evidence and to disregard the assistant trial counsel's statement that EN's family believed her. The military judge instructed the members that "[i]t is [their] exclusive province, the court members, to determine the credibility of the witnesses."[22] We find that this instruction, given immediately after the objection, was sufficient to cure the error of not sustaining the objection. Seeing no evi-

---

[22] *Id.*

dence to the contrary, we find that the members followed the military judge's instructions. *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018).

Finally, we consider the strength of the evidence against the accused. In *United States v. Halpin*, the CAAF found that the weight of the evidence supporting the appellant's conviction alone was strong enough to establish a lack of prejudice. 71 M.J. 477, 480 (C.A.A.F. 2013). Here, the government's case, although primarily based on the testimony of EN, was reasonably strong. Both the government's and the appellant's cases hinged on the credibility of EN, who appeared before the members, was extensively cross-examined, and was ultimately believed by the members. Appellant exhibited consciousness of guilt both when he apologized to EN the day after the abuse for being an "asshole" and when he subsequently called his brother and expressed remorse and guilt even though he never explained why.

Considering the isolated and brief nature of the government's improper arguments and the strength of the government's case compared to the appellant's case, we find that the appellant was not prejudiced. In addition, as to the objections made by defense counsel and the military judge's curative instructions in response, we are confident in the members' ability to adhere to the military judge's instructions and put the trial counsel's comments in proper context. We have no cause to question the fairness or integrity of the trial and are convinced that the members convicted the appellant on the evidence alone.

## E. Ineffective Assistance of Counsel

Appellant claims the trial defense counsel was ineffective for failing to move the court to depose critical witnesses, produce certain evidence, and for failing to object to trial counsel's improper argument.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). When reviewing such claims, we follow the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

### 1. Failure to request depositions of witnesses

Appellant argues that his defense counsel was ineffective because he failed to request that the convening authority or the military judge order a deposition of the victim's mother and brother. EN's mother, GB, refused to speak with anyone on the appellant's defense team. EN's brother, RJ, was 12

years old at the time of the Hawaii visit and was the only other possible witness to the abuse. RJ's stepmother had stated that RJ generally refuted EN's allegations. RJ was never interviewed by law enforcement and his mother, GB, refused to allow RJ to speak to defense counsel. The defense theory on this issue was that EN's family members refused to speak with defense counsel because they were trying to protect the victim's stepfather, the current husband of GB, because he and RJ had a physical altercation and the police were involved.

We need not determine "whether counsel's performance was deficient . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. When a claim for ineffective assistance of counsel is premised on trial defense counsel's failure to move the court to take some action, "an appellant must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. McConnell*, 55 M.J. 479, 481 (C.A.A.F. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. "Failure to raise a meritless argument does not constitute ineffective assistance." *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997).

After charges are preferred, a deposition may be ordered whenever "due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness be taken and preserved for use at a . . . court-martial." R.C.M. 702(a). Witnesses do not have an obligation to submit to pretrial interviews. There was no need to preserve the testimony of either GB or RJ for trial because they were both present for and testified at trial. GB refused to speak with defense counsel, but this does not rise to the level of the "exceptional circumstances" required by R.C.M. 702(a). *See United States v. Cabrera-Frattini*, 65 M.J. 950, 953 (N-M. Ct. Crim. App. 2008) (the purpose of depositions is to "preserve testimony for future use at trial" and not as a discovery vehicle). RJ testified as a defense witness and the effective sum of his testimony was that he did not see anything unusual during the trip to Hawaii. Accordingly, the appellant failed to establish that there was a reasonable probability that his motion to depose GB and RJ would have been meritorious. Moreover, the appellant fails to persuade us that if his counsel had been permitted to depose the witnesses, there would have been a different result. The appellant merely speculates that his counsel would have discovered additional information leading to further investigation. The appellant failed to show that a motion to depose RJ or GB would have been meritorious or that the motion, if granted, would have produced a different result. Therefore, the appellant failed to show prejudice.

*2. Failure to request the production of evidence*

Appellant argues that his civilian defense counsel was ineffective because he failed to move the court to order production of EN's disposable camera. EN's mother, GB, told investigators that EN had brought a disposable camera home from Hawaii but that she had not had the film developed. GB testified that she did not know where the camera was or if anyone in the family still possessed it.

We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The presumption of competence is overcome when the appellant's allegations are true and there is no reasonable explanation for the counsel's actions, counsel's level of advocacy falls "measurably below the performance . . . [ordinarily expected] of fallible lawyers," and "there is a reasonable probability that, absent the errors, there would have been a different result." *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991) (internal quotation marks omitted). We will not second-guess strategic or tactical decisions made by the trial defense counsel unless the appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms. *Mazza*, 67 M.J. at 475.

Here, the defense did not know what pictures were on the disposable camera. The pictures may have been exculpatory or they may have further implicated the appellant by supporting EN's testimony that the trip became awkward after the abuse. Neither party suggested the camera contained photographs of the appellant abusing EN. It was a reasonable tactical decision to not request production of the camera, and instead argue the absence of the camera casts doubt on the witnesses' testimony and showed bias.

Moreover, the appellant is not entitled to the production of unavailable evidence that is "destroyed, lost, or otherwise not subject to compulsory process." R.C.M. 703(f)(2). A motion to compel discovery would likely have failed first because the appellant could not establish that the disposable camera even existed and second because the camera was not in the possession of the United States. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). Accordingly, the appellant cannot show that the motion would have been meritorious and therefore cannot show prejudice. *McConnell*, 55 M.J. at 481.

*3. Failure to object to improper argument*

Appellant argues that his trial defense counsel was ineffective for not objecting to the trial counsel's improper argument referring to the appellant as a child molester, vouching for the veracity of EN, and imploring the members

to convict the appellant in order to avoid giving all child molesters "a license to commit these crimes."[23]

"Failure to raise a meritless argument does not constitute ineffective assistance." *Napoleon,* 46 M.J. at 284. (internal quotations omitted). We need not determine "whether counsel's performance was deficient . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. Here, we have already determined that the assistant trial counsel's arguments were either not improper, or if they were, they were not prejudicial to the appellant. Accordingly, trial defense counsel's failure to object was not prejudicial and therefore cannot constitute ineffective assistance.

## III. CONCLUSION

The supplemental Court-Martial Order shall reflect an accurate summary of the Charge and Specification including the language "groin" and "inner," the appellant's plea of not guilty to the specification, and the correct findings—of the Specification, guilty, except the words "groin" and "inner"; of the excepted words, not guilty; of the Charge, guilty.

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings, as modified by this court, and the sentence, as reassessed, are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866. Accordingly, the findings as modified and sentence as reassessed are **AFFIRMED**.

Chief Judge CRISFIELD and Judge GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[23] Appellant's Brief at 39.